Breitel, J.
Lentini Brothers Moving & Storage Co., Inc. appeals as of right on constitutional grounds from an Appellate Division order compelling its compliance with a subpoena duces tecum issued by the New York City Commissioner of Consumer Affairs. The commissioner had moved pursuant to CPLR 2308 (subd. [b]) to compel compliance and Lentini had cross-moved to quash the subpoena.
A preliminary question is whether the Transportation Law, under which carriers of household goods within New York City are subject to regulation by the State Commissioner of Transportation, and notably more intensive regulation within the city than elsewhere in the State, pre-empts the field to bar enabling local legislation and inquiry into deceptive or misleading practices by the city’s Consumer Affairs Commissioner (Transportation Law, § 160, subd. 3, par. [c]). If there be no such pre-emption, a second issue is whether, as a matter of law, the commissioner’s affidavit in support of the subpoena affords a sufficient basis for belief that the books and records sought would be material and relevant to her inquiry.
Special Term rejected the pre-emption argument, ordered Lentini to comply with the subpoena duces tecum, and denied Lentini’s cross motion to quash the subpoena. The Appellate Division unanimously modified to permit Lentini, at its option and for its convenience, to exhibit certain of its books and records to the commissioner at Lentini’s offices, and otherwise affirmed the order at Special Term. A motion to dismiss the appeal on the ground that no appeal lay as of right on a constitutional issue was denied by this court (33 N Y 2d 644).
It is concluded, in agreement with the courts below, that the; State regulatory scheme does not pre-empt the field to bar local legislation and the city commissioner from investigating household movers for deceptive or misleading practices under New York City’s Consumer Protection Act of 1969. There was insufficient presented, however, in the commissioner’s affidavit to *253 warrant Special Term to compel compliance with, the broad subpoena for books and records detailing all transactions with Lentini’s local customers. Consequently, for the last limited reason the order of the Appellate Division should be reversed but without prejudice to a renewal of the commissioner’s motion, the making of a new motion, or to the issuance of a new subpoena of limited scope with use of the ameliorative provisions suggested by the Appellate Division. Judicial enforcement of a subpoena, however, should be extended only after the commissioner shall have established a basis for her action from either the prior inquiries or a new preliminary inquiry of specified recent complaints made to her. She should be prepared if necessary to support the issuance of the new subpoena on the results of her preliminary inquiry.
The subpoena duces tecum was issued to Lentini Brothers following an investigation by the city department in early 1972. Purporting to act in response to consumer complaints, depart-, ment employees went to Lentini’s offices on two occasions in February, 1972 to “ audit ” the books. They asserted authority under a New York City local law providing for licensing of those engaged in public carting. On the second occasion, the department employees were asked to leave by Lentini.
Subsequently, in May, 1972, the subpoena duces tecum was issued by then Commissioner Bess Myerson. It directed Lentini to appear and produce the following 11 items for the period subsequent to January 1, 1971: all contracts, bills of lading, and freight bill forms used by Lentini; all Lentini promotional literature; all Lentini employees, agents, and persons authorized to give estimates; all storage contracts, bills of lading, freight bills, and storage credit plans signed by New York City customers; all bills sent out and payments received by Lentini from New York City customers; and all damage claims submitted to Lentini by New York City customers.
Following Lentini’s failure to comply with the subpoena, Commissioner Myerson moved at Special Term to compel compliance pursuant to CPLB, 2308 (subd. [b]). The commissioner averred that she had received “ numerous complaints ” which caused her to believe Lentini was engaged in a “pattern of deceptive trade practices ” in violation of chapter 64 of the Administrative Code of the . City of New York, the Consumer *254 Protection Law of 1969 (Local Laws, 1969, No. 83 of the City of New York). She did not state the number of complaints received, when they were received, or whether any complaints had been verified by department employees. The commissioner further ay erred that over 85% of the complaints alleged actual costs of moving were considerably greater than verbal estimates, sometimes five times as great, and that over 60% of the complaints alleged that labor charges were excessive, certain charges for sanitizing and storing articles in barrels were levied without customer consent and, occasionally, the work was not performed.
Lentini’s first contention is that the commissioner has no authority to investigate consumer complaints against a household mover because the State has pre-empted the field of regulating household movers.
• Since 1955, carriers of household goods within New York .City have been.subject to regulation by the State Commissioner of Transportation (Transportation Law, § 160, subd. 3, par. [c]). Carriers must obtain a certificate of public necessity and a permit from the Commissioner of Transportation (§§ 162, 165). They must file and publish their rates and tariffs, and no variation in charges is permitted (§§ 172, 173). (See, generally, Kindermann Fireproof Stor. Warehouses v. City of New York, 39 A D 2d 266, 268-269.)
The city commissioner, however, bases her authority on the regulatory scheme of the New York City Consumer Protection Act of 1969. The local law prohibits “ deceptive or unconscionable trade practice [s] ” by those who provide “ consumer goods or services ”. The Commissioner of Consumer Affairs is given broad rule-making and enforcement powers, including authority to hold hearings and serve subpoenas.
In contending that State regulation of household movers has pre-empted the field, Lentini relies on Kindermann Fireproof Stor. Warehouses v. City of New York (39 A D 2d 266, supra). The Kindermann case declared New York City’s earlier public cart licensing law (Administrative Code of City of New, York, ch. 32, art. 15, as amd. by Local Laws, 1968, No. 68) invalid on the ground that it was inconsistent with the Transportation Law and that the State had pre-empted the field. The local law in the Kindermann case required household movers to obtain a *255 city license and gave priority to rates set by agreement of the parties. Thus, the city had adopted a licensing and regulatory scheme which precisely paralleled the State licensing and rate-setting scheme (see 39 A D 2d, at pp. 268-269). That is not the case under the later local law, however, since the Consumer Protection Act prohibits deceptive practices not dealt with by the Transportation Law. (It might be noted that the commissioner purported to conduct her “ audit ” under the licensing law held invalid in the Kindermann case. She bases her sub-. poena power, and the later issued subpoena, however, on the Consumer Protection Act, not dealt with in the Kindermann case.)
Although there is no apparent inconsistency between the Consumer Protection Act and the Transportation Law, it is still necessary to determine whether the Transportation Law purports to occupy the entire field to the exclusion of all other regulation (see People v. Lewis, 295 N. Y. 42, 51; Wholesale Laundry Bd. of Trade v. City of New York, 17 A D 2d 327, 330, affd. on opn. at App. Div. 12 N Y 2d 998). State regulation of motor carriers is designed to ‘ ‘ foster sound economic conditions ” in the industry, to “ promote adequate, economical and efficient service ” and to promote “ reasonable charges * * * without unjust discriminations * * * and unfair or destructive competitive practices ” (Transportation Law, § 160). No intent is indicated, nor is it appropriate to imply one, to preclude a municipality from enacting a local law to protect consumers from false or misleading practices by household movers. The purposes of State regulation and the local law are really quite different. This is not an instance where a locality simply duplicates the regulatory effort of the State to accomplish a like purpose (e.g., Matter of Kress & Co. v. Department of Health, 283 N. Y. 55; Kindermann Fireproof Stor. Warehouses v. City of New York, supra; Wholesale Laundry Bd. of Trade v. City of New York, supra).
Concluding that the local law is valid when applied to household movers, it is necessary to reach the second, and more troublesome issue. Lentini contends tjiat the subpoena improperly seeks production of all its business records without a sufficient showing by the commissioner to justify her suspicions of wrongdoing.
*256 It is settled in this State that there are limits upon the power of public officials authorized to issue subpoenas. In the leading case of Carlisle v. Bennett (268 N. Y. 212, 217-218) it was stated that the power of the Attorney-General, in investigating alleged securities fraud, is necessarily limited to a “ proper case ”, “ one where the books and papers * * * have some relevancy and materiality to the matter under investigation [citations omitted].” The court further stated that the statutory authorization to issue subpoenas would not be construed to allow the Attorney-General to embark upon a roving course to pry into the affairs of any person.
It has been repeatedly stated that a witness subject to a “ non-judicial ” subpoena duces tecum may always challenge the subpoena in court on the ground it calls for irrelevant or immaterial documents or subjects the witness to harassment (e.g., Matter of A’Hearn v. Committee on Unlawful Practice of Law of N. Y. County Lawyers’ Assn., 23 N Y 2d 916, 918, cert. den. 395 U. S. 959; Dunham v. Ottinger, 243 N. Y. 423, 433-434, opp. dsmd. 276 U. S. 592 ; Matter of Hirshfield v. Hanley, 228 N. Y. 346, 349; Matter of Dairymen’s League Coop. Assn. v. Murtagh, 274 App. Div. 591, 596, affd. 299 N. Y. 634; Matter of Horn Constr. Co. v. Fraiman, 34 A D 2d 131, 134, affd. 29 N Y 2d 559). And the public official seeking court enforcement of the nonjudicial subpoena must show the records bear a reasonable relation to the subject matter under investigation and the public purpose to be served (Matter of La Belle Creole Int., S. A. v. Attorney-General of State of N. Y., 10 N Y 2d 192,196).
Most recently this court further defined the limits on nonjudicial subpoena power in Matter of A’Hearn v. Committee on Unlawful Practice of Law of N. Y. County Lawyers’ Assn. (23 N Y 2d 916, supra). In the A’Hearn case it was said that an agency asserting its subpoena power must show its authority, the relevancy of the items sought, and some basis for inquisitorial action; The court further stated that, especially in issuing a subpoena duces tecum: “ [N]o agency of government may conduct an unlimited and general inquisition into the affairs of persons within its jurisdiction solely on the prospect of possible violations of law being discovered ”. (23 N Y 2d, at p. 918.)
To be sure, the required showing may amount to less than “ probable cause ” to believe a violation of law will be disclosed *257 (see 1 Davis, Administrative Law, § 3.04, at p. 179, § 3.12, at p. 218; see, generally, 2A Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 2304.07). Thus, it was said in Matter of La Belle Creole Int., S. A. v. Attorney-General of State of N. Y. (10 N Y 2d 192, 196, supra) that “ unless the subpoena calls for ‘ documents which are utterly irrelevant to any proper inquiry ’ [citation omitted] or its ‘ futility * * * to uncover anything legitimate is inevitable or obvious ’, the courts will be slow to strike it down [citations omitted] ”. Nor must the showing amount to a “ forecast ” of the probable fruits of the subpoena (see Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 216). Logically, the showing required will depend on the breadth of the subpoena and the status of the investigation at the time the subpoena issues (Matter of A’Hearn v. Committee on Unlawful Practice of Law of N. Y. County Lawyers’ Assn., 23 N Y 2d, at pp. 918-919; cf. Oklahoma Press Pub. Co. v. Walling, 327 U. S., at p. 209).
It has been suggested in some cases that an agency need show no basis for belief of possible law violation to support exercise of its subpoena power (e.g., United States v. Powell, 379 U. S. 48, 57). In United States v. Powell, the Supreme Court upheld an Internal Revenue Service summons of the corporate taxpayer’s books where the books had been previously examined and the only basis for assessing a deficiency would have been a showing of fraud. The court interpreted a Federal statute barring “ unnecessary ” examinations of taxpayers’ books, not to require a showing of “ probable cause ” to support the subpoena. In passing, the court noted that “ probable cause ” generally need not be shown to support administrative agency subpoenas. The holding, however, rested on interpretation of the relevant Federal statute not to require a showing of probable cause.
Moreover, the cases relied upon by the dicta in the Powell case would not support the broad assertion that the basis for agency action need not be shown to support a subpoena. In United States v. Morton Salt Co. (338 U. S. 632), the court upheld an order by the Federal Trade Commission directing the respondents to file reports detailing compliance with a cease and desist decree. Although it concluded that the agency could investigate “ merely on suspicion that the law is being violated ”, the court *258 went on to state that governmental investigation may be so sweeping and so unrelated to the matter under inquiry as to “ exceed the investigatory power ” (338 U. S., at pp. 642, 652). The essence of determining whether agency action was improper, according to the court, was whether the disclosure sought was “ unreasonable ” (338 U. S., at p. 653; see, to the same effect, Oklahoma Press Pub. Co. v. Walling, 327 U. S. 186, 208, supra).
The question whether, some basis need be shown to support enforcement of a nonjudicial subpoena was squarely raised in the A’Hearn,case. There, the Appellate Division rejected the contention that there must be some factual basis to support enforcement of a subpoena duces tecum issued by a bar association over the signature of an Appellate Division clerk (Matter of A’Hearn v. Committee on Unlawful Practice of Law of N. Y. County Lawyers’ Assn., 30 A D 2d 47, 53). Although it affirmed the decision of the Appellate Division, this court made clear that there must be some factual basis shown to support the subpoena. Moreover, it stated that the showing to be made was related to the breadth of the inquiry and the extent of the investigation preceding the subpoena (23 N Y 2d, at pp. 918-919; see, also, Matter of Horn Constr. Co. v. Fraiman, 34 A D 2d 131, 133, supra).
Nothing said thus far is intended to suggest that the commissioner was required to establish a strong and probative basis for investigation, let alone probable cause as that term, has been used in the criminal law. All that is required is that the scope of the subpoena and the basis for its issuance be more than isolated or rare complaints by disgruntled customers, lest the powers of investigation, especially in local agencies, become potentially instruments of abuse and harassment. Considering the multiplicity of municipal regulatory agencies, the wide areas they necessarily cover, and the coverage of many if not all enterprises from the very small to the very large, there is a real danger of abuse of power if its exercise is made to depend on shadowy complaints and surmises.
In this connection, it is appropriate to consider a case recently decided in this court, Liberty Mut. Ins. Co. v. City of New York Comm. on Human Rights (31 N Y 2d 1044). There the court noted that the complaint filed by the commission had been loosely drawn, but found it minimally sufficient to sustain an *259 investigation and the issuance of subpoenas. By its qualifications the court made it clear that the outer limits were reached in sustaining the commission action. But more important, even there the commission was justified by its finding that the company to be investigated had employed relatively few persons who were members of minority groups although it operated in a labor market with a substantial minority group population. Thus, the finding of suspect discrimination was based on the statistical pattern used in antidiscrimination legislation and the efforts at control of ethnic discrimination common since the late 1940’s. In short, the finding of suspect discrimination was based on an objective pattern of employment practices, in an area in which it is rarely possible to establish affirmative acts of discrimination.
There is no like objective pattern or equivalent support in this case to suggest that Lentini was engaged in deceptive or misleading practices. On the contrary, the basis for investigation is made to rest on specific complaints by customers. But the information as to those complaints is hopelessly inadequate to support an inference of fraud even to the minimal degree required to authorize an investigation by an administrative agency. As noted in this court’s memorandum in the Liberty Mutual case, such inadequacy trenches on due process of law.
The appropriateness of the rule expressed in the A’Hearn case, requiring not only relevancy but some basis for inquisitorial action in order to show materiality, is apparent when applied to the Lentini Brothers. The commissioner averred only that she had received “ numerous complaints ”, a large percentage of them accusing Lentini of gross disparities between estimates and actual billings. No information is given as to the number of complaints, the period covered, or the. period over which they were received. Although the department’s investigation began no later than January, 1972 and its staff “ audited ” Lentini’s books on two occasions, no mention is made of information gained or of any other effort to investigate complaints informally, or what that investigation should, or seemed to show, even in the most tentative form.
Instead, the commissioner has sought to enforce a subpoena of the broadest possible dimensions. By its terms all books and records concerning Lentini’s operations must be exhibited *260 to the commissioner. All this is sought based only on the alleged receipt of “ numerous complaints ” by the commissioner, the nature and reliability of which Special Term could not judge. In short, in this case, as was bordered upon in the A’Hearn case, the scope of relevancy and materiality overlaps with the risks and possible fact of unjustified harassment. Less of a showing should be required for a preliminary or tentative inquiry, and more for one that might otherwise be causelessly broadened into an unlimited examination of the business affairs of an enterprise (Matter of A’Hearn v. Committee on Unlawful Practice of Law of N. Y. County Lawyers’ Assn., 23 N Y 2d, at pp. 918-919; cf. Carlisle v. Bennett, 268 N. Y. 212, 217, supra).
It is therefore concluded that an insufficient basis has been shown by the commissioner to permit judicial enforcenient of the present subpoena. The slim showing made to support inquisitorial action directed against Lentini, if allowed to justify the broad subpoena issued in this or in future cases, might too easily subject innocent parties to administrative abuse.
It would not be desirable, however,.to preclude the commissioner from seeking to renew her motion or begin new proceedings to compel compliance based on a sufficient showing, as detailed earlier in this opinion.
Accordingly, the order of the Appellate Division should be reversed, with costs to appellant Lentini Brothers, the motion to compel compliance denied, and the cross motion to quash the subpoena granted.
Chief Judge Fuld and Judges Burke, Jasen, Gabrielli, Jones and Wachtler concur.
Order reversed, etc.