Bernard Dubin, J.
Attorney-General Lefkowitz designated respondent Hynes as Deputy Attorney-General with the mandate to investigate nursing home and other health care abuses. The appointment was made pursuant to the authority *258 of the Executive Law (§ 63, subds 3, 8), with the approval of the Governor, and at the request of the Commissioners of the State Departments of Social Services and Health. The Governor’s approval was formally given by Executive Order, No. 4, dated February 7,1975 (9 NYCRR 3.4) which implemented the respondent’s investigatory mandate by conferring upon him the subpoena power of subdivision 8 of section 63 of the Executive Law. In the course of his investigation, Hynes served a subpoena duces tecum upon petitioners, owners of the Irwin Nursing Home, directing petitioners to appear at his office and bring with them 46 different books and records for each of the years 1968 to 1975, inclusive.
This is a motion by the petitioners to quash the subpoena, the request to modify or withdraw it having been denied (CPLR 2304). Petitioners set forth the following grounds for quashing the subpoena: (1) the subpoena is vague and over-broad and was issued simply to harass petitioners; (2) production of the material sought could incriminate petitioners and thus violate their Fifth Amendment right against self incrimination; (3) the production of the books and records would violate the privilege between husband and wife regarding marital communications; (4) production of patient records and charts would violate the physician-patient privilege.
The court will first consider petitioners’ contention that the subpoena is vague and overbroad and that it was issued without basis to harass the Lewises for their refusal to allow an auditor from the Deputy Attorney-General’s office to inspect the nursing home records.
That the subpoena duces tecum is not vague is apparent from the face of it. The 46 items it demands are spelled out explicitly. Petitioners need not speculate as to what is asked for, but are being told exactly what records they must produce.
The breadth of the materials sought is equal to the scope of the inquiry. The records have to do with the "management, control, operation or funding of any nursing home”, which is the subject of the respondent’s investigatory power pursuant to Executive Order, No. 4 (9 NYCRR 3.4) signed by Governor Carey. It is true that many different items are being sought, but the relevancy of these items is manifest. All relate directly or indirectly to the management of the Irwin Nursing Home just as any business entity’s records reflect its management. A comparison of the subpoena with the duty and authority vested in *259 the special prosecutor by section 63 of the Executive Law and Executive Order, No. 4 (9 NYCRR 3.4) leaves no doubt that the books and records bear a reasonable relation to the subject matter under investigation and to the public purpose to be achieved (Matter of La Belle Creole Int., S. A. v Attorney-General of the State of N. Y., 10 NY2d 192; Carlisle v Bennet, 268 NY 212).
Petitioners’ claim of harassment is unsubstantiated. An inquiry is being directed at petitioners for the reason that $100,000 of the Lewises’ claimed expenses for the years 1968-1972 has been disallowed according to Health Department information. Were there infrequent disallowances or rejection of only a minimal amount of money claimed, there might be merit to petitioners’ contention that no basis exists for singling them out for investigation. However, where a substantial amount of claimed expenditures has been rejected, sufficient cause exists for investigation and issuance of a subpoena. In short, a factual basis has been made out to inquire into the Irwin Nursing Home’s possible fiscal and record-keeping irregularities (Meyerson v Lentini Bros. Mov. & Stor. Co., 33 NY2d 250).
The precision and relevancy of the subpoena duces tecum and its factual basis have been demonstrated to the court’s satisfaction (Lentini, supra).
Petitioners’ second and third contentions, that the material sought is privileged, involve the Fifth Amendment right not to incriminate oneself as well as the "required records” exception to the privilege.
It has long been established that the privilege against compulsory self incrimination protects individuals from compelled production of personal papers as well as compelled oral testimony (Boyd v United States, 116 US 616), but the Fifth Amendment privilege is purely personal and cannot be relied upon to avoid the production of records of a collective entity (Wilson v United States, 221 US 361). The issue, therefore, is whether the subpoena in the instant case calls for personal records or records which are held by petitioners in a representative capacity (Bellis v United States, 417 US 85).
Although the collective entity theory has been most used to defeat the claim of privilege where corporate records were sought (Grant v United States, 227 US 74; Wheeler v United States, 226 US 478; Dreier v United States, 221 US 394; Wilson, supra), the United States Supreme Court recently held that a three-man partnership doing business as a law *260 firm was a collective entity whose records did not belong to any single partner and were therefore not his personal papers to which the privilege against self incrimination attached (Bellis v United States, supra).
The Irwin Nursing Home, like all other nursing homes in the State, falls within the definition of a "hospital” under section 2801 of the Public Health Law. As a "hospital” it is subject to the regulatory provisions of article 28 of the Public Health Law. The consequence of so defining and regulating nursing homes is the creation by the Legislature of a business entity which is separate from its owners and operators. "At bar, however, the nursing homes are not private premises, but are licensed by the State and house elderly and infirm human beings.” (Uzzillia v Commissioner of Health of State of N. Y., 47 AD2d 492, 497.)
Although the Lewises conduct their business as a partnership, it matters not whether the nursing home is operated as a corporation or a partnership. According to Beilis (supra), the form of management is not the sole controlling factor, and the court finds, as the Beilis court found, that the Irwin Nursing Home has an established institutional entity, independent of its owners, and that it was not organized on a temporary but rather a permanent basis. The nursing home represents a formal arrangement for the continuing conduct of business. It had its origin in 1930 as a maternity hospital and was converted to a nursing home about 1953 when purchased by petitioners. It houses 91 elderly and infirm patients. By all reasonable standards, it is an entity apart from its owners.
Those records which the Irwin Nursing Home maintains can hardly be considered the personal papers of Eli and Hilda Joyce Lewis. Is a patient account record the property of the home or of the Lewises? Obviously, it belongs to the home. The most precise test would be to ask which records, if the Irwin Nursing Home were sold, would be transferred to the new owners as incidents of and necessary to management. Certainly no personal records of the Lewises would be conveyed to the new owners but, just as certainly, all records necessary to carry on the business of operating a nursing home must be conveyed and the latter records would be considered exclusively those of the nursing home.
The court, examining the list of items sought, concludes that all 46 relate to the business of the Irwin Nursing Home and none can be termed the personal property of Eli and *261 Hilda Joyce Lewis. The petitioners have mere custody of the records on behalf of the business entity which they happen to own. No privilege against self incrimination attaches to the books and records of a separate business entity.
The marital privilege against self incrimination is an extension of the Fifth Amendment right. It is grounded upon the theory that just as one may not be convicted by his own compelled testimony, so may he not be convicted by the testimony of his spouse as to a communication uttered in reliance upon the sanctity of the marital relationship (CPLR 4502, subd [b]). The court finds that the production of the subpoenaed material would not violate the marital privilege. That privilege is no greater than the right not to incriminate oneself, and the court has held no such right exists in this case because the records are those of a separate business entity. Furthermore, the entries and other records of the nursing home are not communications from one spouse to the other, and there is no indication that any entry or record was made in reliance upon and in respect of the marital relationship (Richardson, Evidence [10th ed], § 448).
The required record exception to the privilege against self incrimination was stated in Wilson v United States (221 US 361, 381-382) as follows: "The fundamental ground of decision in this class of cases, is that where, by virtue of their character and the rules of law applicable to them, the books and papers are held subject to examination by the demanding authority, the custodian has no privilege to refuse production although their contents tend to incriminate him. In assuming their custody he has accepted the incident obligation to permit inspection.”
The doctrine was reiterated in Shapiro v United States (335 US 1) and more recently in Grosso v United States (390 US 62) where the Supreme Court set forth the criteria of the exception as: (1) the record keeping must be regulatory in nature; (2) the records required to be kept must be of a kind which the regulated party has customarily maintained; and (3) the records must have assumed "public aspects” which render them analogous to public records.
Nursing homes in this State are regulated by the provisions of the Public Health Law and title 10 of the Official Compilation of the Codes, Rules and Regulations of the State of New York. Pursuant to the regulatory authority granted to him by section 2803 of the Public Health Law, the commissioner has *262 approved rules which call for strict record keeping procedures, among them 10 NYCRR 730.2, 730.3, 730.6, 730.7, and 730.9. The foregoing statutes are designed to insure that close control may be maintained over nursing homes by resort to examination of the records which reflect the conduct of the home toward its patients. These records are obviously regulatory in nature.
Additionally, in signing the Medicaid provider agreement, petitioners agree to keep such records and furnish such information to the New York State Department of Social Services as may be required by the department to insure that the nursing home is complying with State and Federal regulations regarding the conduct of a "Skilled Nursing Home”.
Such records are customarily kept in the industry as a means of self-audit and control. Only by meticulous record keeping of all financial, patient, and personnel transactions can a home be sure that its patients are receiving adequate medical treatment and can the home be confident of proving and receiving financial reimbursement from those governmental agencies which pay for care to the elderly and infirm.
That these records have public aspects is beyond argument. The records are open to inspection by those charged with the obligation to supervise the care given to residents of nursing homes. As the Appellate Division, Second Judicial Department, recently stated in Uzzillia (47 AD2d 492, 497, supra): "Nursing home patients generally are elderly, infirm or disabled and no longer under the immediate care and supervision of their loved ones. The people of this State have placed upon their Commissioner of Health the awesome burden of insuring that elderly and infirm persons entrusted to nursing homes are given the care and protection required by the health laws of this State.”
The care given the aged is a matter of public concern. The records are open to examination by the Commissioner of Health. In all respects these are public records.
The criteria of the "required record” exception are met in this case, and the exception is broader than the privilege against self incrimination. Those records among the 46 sought which are required by law to be kept would have to be produced even if they were petitioners’ personal papers because of the "required record” exception. And since the court has also found them to be the records of a separate business *263 entity, their production is compelled by two different legal theories.
In passing, the court might note that this case is distinguishable from United States v Slutsky (352 F Supp 1105) and Matter of Moskowitz (NYLJ, April 9, 1975, p 2, Sup. Ct., New York County) in that those cases did not involve the "required record” exception and the papers subpoenaed in those cases were held in a strictly personal capacity.
The last contention is that production of the patients’ medical charts would violate the physician-patient privilege (CPLR 4504). The court finds merit in this position insofar as the records of current residents and living former residents of the nursing home are concerned. Therefore, the petitioners may excise from the medical charts of all those patients just described any record of communications from a patient which falls within the scope of the privilege.
The records to be produced are voluminous. The Deputy Attorney-General has consented to examine them at the nursing home in order to spare the petitioners the expense and burden of transporting the material to his office. The subpoena shall be modified to reflect this change in location of examination.
The motion to quash the subpoena is denied in all respects except as to the patients’ medical charts, as indicated above.