Bernard Dubin, J.
Petitioners Robert Cappetta and Seena Cappetta, his wife, move for an order vacating a subpoena duces tecum.
The petitioner Robert Cappetta, presently hospitalized, works as a custodian in the Far Rockaway High School, Queens, New York City. In such position he is responsible for the physical maintenance of that school. On February 17, 1977 a subpoena was served directing him to appear before a Queens Grand Jury, bringing with him: (1) all personnel records of the Far Rockaway High School including time cards, payroll checks, payroll schedules and reports of people working under him; (2) workmen’s compensation reports; (3) monthly expenditure reports; and (4) personal bank account records pertaining to the school. The documents sought range from the years 1974 through 1976. Petitioner’s wife joins in this action since it appears that some of the bank records are in joint names.
Petitioners now challenge this subpoena. Basically, it is contended that Robert Cappetta is an individual contractor rendering services to the board of education and that his records are his private papers, privileged under the Fifth Amendment. The District Attorney rebuts this contention alleging that: (1) the records enjoy no privilege under the Fifth Amendment; (2) in any event the requested material would fall within the required record exception and thus be accessible to the Grand Jury.
In considering the validity of this subpeona, the court starts off with the premise that the Grand Jury has a right to every man’s testimony. If a valid subpoena is issued, it must be honored. (CPL 190.50, subd 3.) With this in the background, the court now considers the arguments advanced.
I
It has long been established that the Fifth Amendment protects against compulsory self incrimination and that this protection extends to the business records of the sole proprietor (Boyd v United States, 116 US 616), as well as to personal *939 documents concerning more intimate information about an individual’s private life (Bellis v United States, 417 US 85, 88).
The Fifth Amendment then establishes a protected area — a " 'private enclave’ ” where one " 'may lead a private life’ ” (Murphy v Waterfront Comm. 378 US 52, 55). However, this privilege is strictly limited to the individual himself; it "is an intimate and personal one” (Couch v United States, 409 US 322, 327). Once a man acts in a representative capacity for any organized institutional activity, he steps outside of this protected areá. The reason for this loss of privilege is that a substantial claim of privacy or confidentiality cannot be maintained with respect to the records of an organized collective entity. As was pointed out in Bellis v United States (supra, p 92): "Control of such records is generally strictly regulated by statute or by the rules and regulations of the organization and access to the records is generally guaranteed to others in the organization * * * In such circumstances, the custodian of the organization records lacks the control over their content and location and the right to keep them from the view of others”. Such records in brief "embody no element of personal privacy” (United States v White, 322 US 694, 700). In essence, then, when one acts in a representative capacity, his right of privacy is merged into the organization itself and the individual speaks not for himself but for the institution he represents. As spokesman for such collective group, one loses his privilege against self incrimination. The reason for this is: "Since no artificial organization may utilize the personal privilege against self-incrimination * * * it follows that an individual acting in his official capacity on behalf of the organization may likewise not take advantage of his personal privilege.” (Bellis v United States, supra, p 90.)
Hence, the issue now facing this court is whether the records now sought are personal in nature and privileged or are they held in a representative capacity for the board of education.
This leads us to the claim of privilege. In the case at bar, petitioner argues that he is an independent contractor entitled to the Fifth Amendment rights of a sole business proprietor (cf. Matter of Moskowitz v Hynes, 48 AD2d 804). To support this position, he enumerates the powers that he enjoys as custodian of a high school. He has the power to hire, fire and contract for outside services to be rendered the school. He covers his own employees with a workmen’s compensation *940 policy in his own name and compiles his own business records including payroll sheets, time cards and sign-in logs. Further, he maintains his own checking and bank account in his own name, not in the name of a corporation, partnership or other business entity. Finally, it is alleged that the board of education has referred to the custodian’s office as that of an independent contractor in connection with Internal Revenue matters.
In rebuttal, the People argue that a school custodian is not an independent contractor, but an administrative employee of the board of education and subject to its jurisdiction. To support this view, the People submitted a copy of a constitutional oath of office in which petitioner swore on December 8, 1950 to faithfully discharge the duties of the office of custodial engineer in the board of education. Further, the District Attorney cites subdivision 4 of section 2573 of the Education Law: "Clerks, draftsmen, inspectors, chemists, tabulating machine operators, auditors, secretaries, stenographers, copyists, statisticians, janitors, custodians, custodian-engineers, and all other administrative employees of a board of education”. (Emphasis added.)
In addition, the record shows that school custodians enjoy civil service status and receive earnings pursuant to a contract with the City of New York. Like other city employees, they are entitled to tenure and a pension upon proper termination of services.
The nature of petitioner’s work and his employment status certainly have a degree of importance in this case. Is he an independent contractor or an administrative employee with unusually broad powers or possibly a combination of both. In determining the relationship of petitioner to the board of education this court must first note that a common definition of an independent contractor is "one who, in exercising an independent employment, contracts to do certain work according to his own methods, and without being subject to the control of his employer, except as to the product or result of his work.” (28 NY Jur, Independent Contractors, p 85, Uppington v City of New York, 165 NY 122.) In exploring the distinction between an employee and an independent contractor one prominent case (Matter of Morton, 284 NY 167, 172), made the following observations: "The disctinction between an employee and an independent contractor has been said to be the difference between one who undertakes to achieve an *941 agreed result and to accept the directions of his employer as to the manner in which the result shall be accomplished, and one who agrees to achieve a certain result but is not subject to the orders of the employer as to the means which are used. (Hexamer v. Webb, supra; Irwin v. Klein, 271 N.Y. 477, 485; Clerk & Lindsell on The Law of Torts [9th ed.], p. 65; Pollock on the Law of Torts [14th ed.], p. 64.) 'What, then, is the test of this distinction between a servant and an independent contractor? The test is the existence of a right of control over the agent in respect of the manner in which his work is to be done. A servant is an agent who works under the supervision and direction of his employer; an independent contractor is one who is his own master. A servant is a person engaged to obey his employer’s orders from time to time; an independent contractor is a person engaged to do certain work, but to exercise his own discretion as to the mode and time of doing it —he is bound by his contract, but not by his employer’s orders.’ ” (Salmond on The Law of Torts [9th ed.], p 90.) (Emphasis supplied.)
The test then "is the existence of a right of control over the agent in respect to the manner in which his work is to be done”. (Matter of Morton, supra, p 172.) Clearly, in the present case, the petitioner has agreed to achieve certain results, i.e., the proper running of the school’s physical plant but is he subject to the orders of the board of education as to the means used? This is a question not easily answered. At a first glance, the custodian’s authority to hire, fire and to contract for outside work would indicate that he is free to employ whatever means he desires to fulfill his job. However, a closer scrutiny shows that all of his enumerated powers are governed by the rules and regulations of the board of education and the exercise of his authority is regulated and supervised by that body. His discretion over employees while extraordinarily broad is fundamentally managerial in nature. Maintenance of one’s own records would certainly be evidence of independence if it were not for the fact that these records are required by the board of education. In actual practice the petitioner must forward the original reports to the board of education and keep only the copies. In addition, this court also takes cognizance of petitioner’s status as a civil servant and one who possesses a certain degree of tenure which would result in a pension upon satisfactory completion of his duties.
Based on all of the facts presented, this court does not find *942 it necessary to sever the Gordian knot by determining petitioner’s precise employment status. Whether a school custodian acts as an independent contractor or as an administrative employee, he renders services to the board of education in the position of a civil servant. In actual practice, his job contains elements of both roles and there can be no doubt that a school custodian enjoys a measure of quasi-independence, unusual if not unprecedented in a city agency. His duties stem from a bewildering mixture of contract, tradition and civil service requirements and his responsibilities could stand clarification either by the board of education or legislation. What is significant for the purpose of this determination is the overriding fact that petitioner is employed by the board of education as a municipal servant. Under these circumstances, no matter what his job designation, he is a public servant dealing with public funds; responsible for public records. Since neither law nor logic recognizes the éxistence of a private public servant, petitioner must act as a representative of the board of education and consequently: "it follows that an individual acting in his official capacity on behalf of the organization may * * * not take advantage of his personal privilege.” (Bellis v United States, 417 US 85, 90, supra.)
Hence, he may not defeat the subpoena on those grounds.
II.
In any event, even if such a paradoxical position were viable, the record sought would fall with the "required records exception” (Shapiro v United States, 335 US 1). This exception to the Fifth Amendment was set forth in Matter of Lewis v Hynes (82 Misc 2d 256, 261), as follows: "(1) the record keeping must be regulatory in nature; (2) the records required to be kept must be of a kind which the regulated party has customarily maintained; and (3) the records must have assumed 'public aspects’ which render them analogous to public records.”
The documents sought in this case deal with the expenditure of public funds received from the board of education for the maintenance and operation of a city high school. By law, the Office of Management and Budget is obligated to prepare a budget for each fiscal year and the head of such agency is empowered to "survey each agency for the purpose of ascertaining its budgetary requirements” (New York City Charter, § 111, subd b). Further, under the Administrative Code of the *943 City of New York (eh 6, § lllb-1.0): "The director of the budget shall have access * * * to the offices of any agency for the purpose of carrying out the duties imposed on him by law”. Hence, these records are subject to city audit and would fall under the required record exception.
The defendents’ motion to quash or modify the subpoena is therefore denied in all respects.