Cooke, J. (concurring in result).
I concur in the result arrived at by the majority. The Appellate Division orders, upholding the issuance of subpoenas duces tecum by the Deputy Attorney-General in respect to books and records of the private proprietary homes for adults, should be affirmed.
I am disturbed, however, by certain implications evident in the majority writing which portend the death knell for certain investigatory powers long vested in the Governor and Attorney-General by subdivision 8 of section 63 of the Executive Law.
The instant matters are sequents of Matter of Sigety v Hynes (38 NY2d 260) where this court, less than two years ago and without hesitation or equivocation, upheld the subpoena power of the Deputy Attorney-General under subdivision 8 of section 63 of the Executive Law, in an ongoing investigation of the nursing home industry. The similarities of the two situations are so readily apparent, with nursing homes on the one hand and private proprietary homes for adults on the other, that Sigety compels an affirmance and legally there is no need for further discussion. Indeed, this is recognized by the majority statement here: "In view of the particular complex of circumstances, and especially the close similarity to nursing homes, we conclude that authority may be found in subdivision 8 of section 63 for the inquiry the Attorney-General, as directed by the Governor, is conducting into the operations of private proprietary homes for adults” (p 415).
The alarming part of the majority’s writing in extension is *418 its cast of a pall over the future vitality of subdivision 8 of section 63. In effect, future challenges to the compass of the statute, with consequent delays and at times dilatory tactics, are encouraged, if not invited. Such an approach is not only unnecessary, for the present determination but it disregards the jurisprudence in respect to the subdivision. This statute and its predecessor (Executive Law, § 62, subd 8) have been in existence 60 years—in peace and war (L 1917, ch 595); and, as the majority indicates, in each instance when challenged this court has seen fit to sustain the authority vested in the statute (p 413).
Apparently as part of the foreboding, it is pointed out to us the predecessor was enacted during World War I, in effect as a standby when there might not be time or opportunity for normal functioning of the legislative process, and that after World War I the Attorney-General recommended repeal (p 413). These arguments or observations were effectively disposed of and rejected long ago by this court. In Matter of Di Brizzi (Proskauer) (303 NY 206), we held at pages 214-215:
"We are thus led to the question of whether the investigation to be conducted by the Attorney-General, and his officers constituting the Crime Commission, is within the purview of subdivision 8 of section 62 of the Executive Law. That subdivision grants authority to 'inquire into matters concerning the public peace, public safety and public justice.’ The words there used by the Legislature are sufficiently broad to encompass an investigation such as the one here involved, the principal purpose of which is to determine whether there exists a relationship between organized crime and any units of government in the State. We think the Legislature intended to use the words in their usual and ordinary sense, rather than to ascribe a narrow and technical meaning to them. Petitioner, however, points to the fact that the statute—Executive Law, section 62, subdivision 8—was enacted in May, 1917, one month following the entry of the United States into World War I (L. 1917, ch. 595) and urges that it was merely 'a war measure with the limited scope of enabling the executive to cope with riots, insurrections, rebellions, sabotage, and similar acts interfering with the very foundations of the State.’ There is little doubt, of course, that the Legislature first recognized the need for such a statute as this because of a war emergency. The Legislature, in enacting the statute, however, utilized general terms, and did not, either expressly or by *419 implication, limit its operation to a time of war. We may not do so now. * * *
"‘Likewise unavailing to petitioner is the fact that, in 1918, the then Attorney-General in his report stated that the powers conferred by subdivision 8 of section 62 of the Executive Law should not be continued in peacetime and recommended that the statute be repealed at the end of the war (1918 Atty. Gen. 16). The simple answer to this argument is that the Legislature failed to heed the recommendation of the Attorney-General and refused to repeal the statute. That, we think, is fairly conclusive evidence that the Legislature determined that the powers conferred by the statute upon the Governor and the Attorney-General might be necessary for the public good in time of peace as well as in time of war”. (Emphasis added.)
Our attention is also drawn to the fact that, when Sigety came before us, "[i]t was vigorously argued then * * * that authority for such investigation was not properly to be found in subdivision 8 of section 63” (p 414). This should lend no comfort to the majority position since the argument was unanimously rejected. In Sigety, (38 NY2d 260, 266, supra) we held:
"Widespread corruption in the nursing home industry, care of the elderly and infirm and compensation for that care from the public treasury are 'matters concerning the public peace, public safety and public justice’ just as organized crime and its relationship to units of government were held to be in Di Brizzi. * * *
"Here, as in Di Brizzi, the court recognizes that there exists a reasonable relation between the action taken by the Governor, through the Attorney-General, and the proper discharge of the executive function. Investigations pursuant to Executive Orders Nos. 2 and 4 serve to inform the Governor, who, so informed, can more adequately fulfill the obligations of his office.”
In considering the executive function, we should keep in mind that the State Constitution mandates that the Governor shall take care that the laws are faithfully executed and that he shall recommend such matters to the Legislature as he deems expedient (art IV, § 3). The Attorney-General is the head of the Department of Law of the State (NY Const, art V, § 4; Executive Law, §60). With the authority granted by subdivision 8 of section 63 of the Executive Law, so long and *420 so well established, it is difficult to conceive of a legal reason for the cutback or limitation of the existing executive power.
It is hardly our function as a court, particularly in these matters following so closely on the heels of Sigety, to declare: "It would seem evident that the course much to be preferred with respect to State-wide investigations of this sort would be the enactment of specific, ad hoc legislative authority for particular inquiries” and "[t]hereby need and scope of the inquiry could be determined by the elected representatives of the people, reflecting an informed, current evaluation of the circumstances” (p 414). Suffice it to say that it is a constitutional requirement and duty of the Governor to make recommendations to the Legislature in areas considered by him to need legislative action and to see to it that bills are signed into law and enforced. Thus, it is the Governor as well who must make "informed, current evaluation of the circumstances”, in order to fulfill the obligations of his elected office and recommend areas ripe for legislation or regulation. As the two branches of government must work together, each must be equally well informed. Parenthetically, the suggested ad hoc approach would be impractical and self-defeating (e.g., when the Legislature is in recess, when powerful interests are involved, or when a politically sensitive investigation should be launched and there is a politically divided Legislature). An investigation, to be successful, must proceed promptly under an ever-present authority to conduct one.
As a corollary to or segment of the ad hoc concept advanced, the majority states in no uncertain fashion that the conclusion reached by it in these instant matters should not be construed (p 415) "as [the court’s] viewing subdivision 8 of section 63 as any reservoir of latent authority for investigations, however desirable they may be thought to be, into other areas of legitimate governmental concern or responsibility” (emphasis added). This was not the same view of the statute pursuant to which investigations into organized crime (Matter of Di Brizzi [Proskauer], 303 NY 206, 215-216, supra), or the letting of municipal contracts (Matter of Greenspon v Stichman, 12 NY2d 1079) or the nursing home industry (Matter of Sigety v Hynes, 38 NY2d 260, supra) were held to be valid by this court. Neither have the Governors through the years so regarded the subdivision. The "reservoir” should not be emptied but its contents controlled, as controlled they are. Just because there is authority to investigate does not imply, of *421 course, that there are no protections, or that there are no limits to the power or that that authority may be abused. The authority to make investigations and issue compulsory process is subject to the requirements that it be exercised concerning relevant matters, not for the sake of harassment, and in reasonable relation to some power or duty, such as to take care that the laws are faithfully executed or to enact laws, and is subject also to the restriction that the power of investigation does not permit unlimited investigation into the private affairs of citizens (see Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d 250, 256; 2A Weinstein-Korn-Miller, NY Civ Prac, par 2304.07, p 23-75).
Chief Judge Breitel and Judges Wachtler and Fuchsberg concur with Judge Jones; Judge Cooke concurs in result in a separate opinion in which Judges Jasen and Gabrielli concur.
In each case: Order affirmed.