In the Matter of VICTOR STRAUBINGER, Appellant, v CHARLES J. HYNES, Deputy Attorney-General of the State of New York, Respondent.

Fourth Department, December 16, 1977

---

APPEARANCES OF COUNSEL

*Albrecht, Maguire, Heffern & Gregg (Charles Dougherty* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General (Charles B. Wydysh* of counsel), for respondent.

**OPINION OF THE COURT**

MOULE, J. P.

Petitioner appeals from an order denying his motion to quash a subpoena duces tecum served upon him by the office of the Special Prosecutor in connection with an investigation of the Sheridan Manor Nursing Home (Sheridan Manor). The issues raised are whether a sufficient factual basis has been established for issuance of the subpoena and whether the court had jurisdiction to entertain the motion to quash.

During the period from February, 1964 until July 1, 1974 petitioner was sole proprietor of Sheridan Manor. Thereafter, on July 11, 1974, Sheridan Manor was incorporated under the name Sheridan Manor Nursing Home, Inc., and that corporation has since conducted its operation. Although petitioner is the sole stockholder, he denies being an officer of the corporation.

On November 19, 1976 respondent served a subpoena duces tecum upon petitioner which directed him to appear before the Special Prosecutor as a witness in an inquiry into the management, control, operation and funding of Sheridan Manor. Petitioner was further directed to produce and deliver certain records pertaining to the financial condition and operation of Sheridan Manor for the period 1970 "to the present". The subpoena was issued pursuant to the authority granted the Special Prosecutor by the Governor's Executive Order No. 4, dated February 7, 1975 (9 NYCRR 3.4) which implemented respondent's investigatory mandate by conferring upon him the subpoena power of subdivision 8 of section 63 of the Executive Law.

By petition and order to show cause dated December 1, 1976 petitioner moved to quash the subpoena alleging that he neither had control nor custody of the records nor the authority to produce them; that the demand for records was so broad and vague as to make compliance impossible; that no valid legal basis existed for issuance of the subpoena; and that the subpoena directed the removal of a large number of records from the nursing home which would have the effect of disrupting its business operations. In his answering affidavit respondent alleged, upon information and belief, that Sheridan Manor, during the years 1970-1975, received moneys from the

State to reimburse it for expenses incurred in furnishing care for Medicaid patients. In order to receive such reimbursement, Sheridan Manor was required to submit each year an HE-2P statement of expenditures which contained a summary of all financial transactions for the year. Respondent further alleged that for the years 1970, 1971 and 1972, a desk audit of the statements of expenditure submitted by Sheridan Manor showed that it overstated its expenses by $1,353 in 1970, by $18,654 in 1971 and by $27,087 in 1972. Moreover, property expenses were misstated for the period 1970-1975. Respondent asserted that these facts established a sufficient inquisitorial basis for issuance of the subpoena.

On March 2, 1977, upon respondent's motion, this matter was transferred by Special Term of the Erie County Supreme Court to the Honorable LEON ARMER, who at that time was presiding over matters relating to the investigation of nursing homes in Erie County. A hearing was held before Justice ARMER on March 3, 1977. Thereafter, on March 29, 1977 the court ruled that the mere fact that certain expenses submitted by Sheridan Manor were disallowed did not constitute a sufficient inquisitorial basis to justify issuance of the subpoena. The court, however, reserved decision on the motion so as to afford respondent an opportunity to present, *in camera,* evidence of criminality that would form an adequate basis to justify issuance of the subpoena.

Subsequently, in a memorandum decision dated May 13, 1977 the court held that no special showing of a color of criminality was necessary to require that the records sought be made available to respondent and that a sufficient factual basis did exist for issuance of the subpoena. It is from the order entered pursuant to this decision denying his motion to quash that petitioner appeals.

Petitioner first contends that there was not a sufficient factual basis established for issuance of the subpoena.

In *Myerson v Lentini Bros. Moving & Stor. Co.* (33 NY2d 250, 256) the limits on nonjudicial subpoena power were set forth; i.e., that the agency asserting its subpoena power must show its authority, the relevancy of the items sought, and some basis for inquisitorial action. The sole issue here concerns the last-mentioned item; whether an inquisitorial basis existed for issuance of the subpoena.

In *Matter of Windsor Park Nursing Home v Hynes* (42 NY2d 243) the Court of Appeals addressed this very issue.

There, to establish an inquisitorial basis, the Special Prosecutor relied on the results of an audit which revealed that $21,077 in expenses asserted by petitioner to have been incurred in patient care had been wrongfully claimed. The petitioner argued that the disallowances were caused by the imposition of cost ceilings upon legitimate patient-related expenses. The Special Prosecutor countered that some of the disallowed items included payments for personal items of the directors and partners. In holding that a sufficient factual basis had been established for the issuance of the office subpoena, the Court of Appeals stated (p 246): "Nonjudicial office subpoenas must bear only a 'reasonable relation to the subject-matter under investigation and to the public purpose to be achieved' (Matter of Sussman v New York State Organized Crime Task Force, 39 NY2d 227, 231; Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d 250, 257). Probable cause that there has been wrongdoing is not essential. The records sought here obviously concern a nursing home. Given the Department of Health audit, it cannot be said that the possible fiscal and recordkeeping irregularities to which the Special Prosecutor points do not meet the necessary standard (cf. Matter of Lewis v Hynes, 82 Misc 2d 256, affd 51 AD2d 550)."

In Matter of Lewis v Hynes (supra) cited in Windsor Park, an inquiry was being directed at petitioners on the ground that $100,000 in claimed expenses for the years 1968-1972 had been disallowed. The court there stated (p 259): "Were there infrequent disallowances or rejection of only a minimal amount of money claimed, there might be merit to petitioners' contention that no basis exists for singling them out for investigation. However, where a substantial amount of claimed expenditures has been rejected, sufficient cause exists for investigation and issuance of a subpoena. In short, a factual basis has been made out to inquire into the Irwin Nursing Home's possible fiscal and record-keeping irregularities (Myerson v Lentini Bros. Mov. & Stor. Co., 33 NY2d 250)" (see, also, Fishkill Health Related Facility v Hynes, NYLJ, Oct. 6, 1977, p 12, col 1).

Here, an audit of statements of expenditure submitted by Sheridan Manor showed that during the period 1970-1972 a total of $47,094 in claimed expenses was disallowed and that property expenses were misstated for the period 1970-1975. Moreover, the amounts disallowed increased significantly during the three-year period. These occurrences cannot be charac-

terized as infrequent disallowances or rejections of only minimum amounts of money claimed.

Petitioner argues that *Windsor Park* is distinguishable inasmuch as in that case the Special Prosecutor alleged that some of the disallowed expenses included payments for personal items of the director and partners. However, in support of its determination that a sufficient basis for inquisitorial action had been established, the Court of Appeals did not refer to the character of the expenses disallowed, but rather held that disallowances which show "possible" fiscal and record-keeping irregularities are sufficient (see *Matter of Lewis v Hynes, supra*). Moreover, by its direct reference to *Matter of Lewis v Hynes* the Court of Appeals implicitly held that disallowances, even though caused by the imposition of cost ceilings upon legitimate patient-related expenses, may provide a sufficient basis for inquiry so long as they are not infrequent and do not constitute rejections of minimal amounts of money claimed.

■ The precision and relevancy of the subpoena duces tecum and its factual basis have been demonstrated to this court's satisfaction and, accordingly, petitioner's contention is found to be without merit.

As a second contention petitioner asserts that Justice ARMER did not have jurisdiction to entertain the motion to quash.

This court, by its order dated June 30, 1976, amended a prior order dated December 15, 1975 which set forth the Supreme Court assignments of the Eighth Judicial District for 1976. This amended order provided for an additional Special Term and Trial Term for Erie County and Niagara County, commencing July 6, 1976, at which terms the Honorable LEON N. ARMER was temporarily assigned to preside. These terms were to exercise their authority only with respect to those matters arising out of Special Grand Juries commencing on April 19, 1976 in Niagara County and December 8, 1975 in Erie County for the purpose of investigating and hearing evidence relating to health care facilities. It was further ordered that any and all pending motions involving these matters were to be heard at these terms.

Petitioner asserts that his motion to quash was improperly transferred by Special Term of the Erie County Supreme Court to Justice ARMER inasmuch as such motion did not involve a criminal matter arising out of the Special Grand Juries referred to in the amended order. Petitioner argues,

therefore, that Justice ARMER acted outside the scope of his jurisdiction in entertaining this civil proceeding, i.e., a motion to quash pursuant to CPLR 2304.

■ Although petitioner's interpretation of the amended court assignment cannot be said to be without some basis, the intent of such order was to invest in Justice ARMER the authority to preside over and determine all motions and matters originating in Erie and Niagara Counties in connection with the Special Prosecutor's investigation of health care facilities. These matters included not only those arising out of the Special Grand Juries but also any civil motion relating to the Special Prosecutor's subpoena power and his ability to investigate and obtain evidence of possible violations of the law for presentation to those Grand Juries. Inasmuch as petitioner does not claim any prejudice or impairment of a substantial right as a result of the transfer of his motion to Justice ARMER (see *Matter of Judicial Inquiry Pursuant to Order of Appellate Division,* 6 AD2d 723) and since Justice ARMER did not entertain a motion outside the jurisdiction intended to be accorded him, we find that petitioner's contention is without merit.

Accordingly, the order denying petitioner's motion to quash should be affirmed.

CARDAMONE, SIMONS, HANCOCK, JR., and DENMAN, JJ., concur.

Order unanimously affirmed, without costs.