NEW YORK STATE DIVISION OF HUMAN RIGHTS, Respondent, v NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant.

NEW YORK STATE DIVISION OF HUMAN RIGHTS, Respondent, v LIBERTY MUTUAL INSURANCE COMPANY, Appellant.

First Department, April 8, 1980

### APPEARANCES OF COUNSEL

*Kalvin M. Grove* of counsel *(S. Richard Pincus, Jeffrey S. Goldman, Martin K. Denis* and *Dennis Drebsky,* with him on the brief; *Fox & Grove,* Chartered; *Skadden, Arps, Slate, Meagher & Flom,* attorneys), for Nationwide Mutual Insurance Company, appellant.

*Kalvin M. Grove* of counsel *(S. Richard Pincus, Jeffrey S. Goldman, Martin K. Denis* and *Daniel M. Semel,* with him on the brief; *Fox & Grove,* Chartered; *Semel, McLaughlin & Boeckmann,* attorneys), for Liberty Mutual Insurance Company, appellant.

*Robert David Goodstein* of counsel *(Ann Thacher Anderson,* attorney), for respondent.

### OPINION OF THE COURT

KUPFERMAN, J. P.

Respondents-appellants Nationwide Mutual Insurance Company and Liberty Mutual Insurance Company (hereinafter "Nationwide" and "Liberty") appeal to this court from an order and judgment of the Supreme Court, New York County (ALLEN MURRAY MYERS, J.), entered October 3, 1979, which granted a petition of the petitioner-respondent New York

State Division of Human Rights (hereinafter "Division") to enforce subpoenas duces tecum issued to Nationwide and Liberty, and denied motions on behalf of Nationwide and Liberty both to quash the subpoenas and to compel depositions of Division employees. Nationwide's motion to change venue to Onondaga County was also denied.

By letters dated April 14, 1978, the Division requested Nationwide and Liberty to furnish the Division with a copy of their respective confidential 1978 EEO-1 Reports. These reports, which give a statistical count of the race-sex breakdown in nine separate job categories, are filed annually with the United States Equal Employment Opportunity Commission pursuant to subdivision (c) of section 709 of title VII of the Civil Rights Act of 1964, as amended (US Code, tit 42, § 2000e-8, subd [c]). Federal law further requires that such reports be kept confidential.

The information so requested was to be used as part of a general research project being conducted by the Division designed to create a model for employment practices of insurance companies doing business in New York State. The project allegedly was based upon a review of 17 insurance companies with verified complaints in regard to discriminatory employment practices filed against them between 1975 and 1977. The Division selected 10 companies for its study, including Nationwide and Liberty.

Nationwide and Liberty did not furnish the requested reports; a second request from the Division failed to elicit a response as well. Division researchers conducting the study then requested, by memorandum dated June 1, 1978, that the Division initiate an informal investigation of Nationwide and Liberty. The request was approved by the commissioner on the same date, and the Division commenced the investigations by notices dated August 7, 1978. The investigations were to focus on all employment practices of Nationwide and Liberty to determine whether they had discriminated against minorities or women. No complaint, either by an individual or the Division, was filed.

On September 26, 1978 and December 29, 1978, subpoenas duces tecum were served upon Nationwide and Liberty, respectively, at their New York City offices. The subpoenas required each company to produce all EEO-1 Reports for 1976 and 1977, all memoranda, documents, notes, surveys, working papers, and all other materials having anything to do with the

preparation of those and other EEO-1 Reports, and other material relating to the company's employment practices. Both companies requested that the Division withdraw its subpoenas as exceeding the Division's statutory authority.

Instead, the Division commenced enforcement proceedings on January 2, 1979, in Supreme Court, New York County, pursuant to CPLR 2308. Liberty moved in Supreme Court, Rensselaer County, to quash the subpoena, and Nationwide made a similar motion in Supreme Court, Onondaga County. The Division countered with motions filed in those courts to change the venue of both motions to New York County and to consolidate them with its motions to enforce the subpoenas, both of which were granted on February 26, 1979.

At approximately the same time, Liberty and Nationwide filed separate motions to compel depositions of two of the Division's employees who were conducting the previously mentioned research project. The motions were denied subject to renewal after the companies had inspected the Division's files pursuant to the New York Freedom of Information Law (Public Officers Law, §§ 85-90). Subsequent to such inspection, appellants renewed their motions to compel depositions, and the Division filed motions for protective orders. Special Term denied appellants' motions, including Nationwide's motion for a change of venue to Onondaga County. The court held that the Division's subpoenas should be enforced in all respects, and granted the protective orders sought by the Division. The parties have stipulated to stay enforcement pending the outcome of this appeal.

Under the Human Rights Law (Executive Law, § 295, subd 6, par [b]), the Division has the power "[u]pon its own motion, to test and investigate and to make, sign and file complaints alleging violations of this article and to initiate investigations and studies to carry out the purposes of this article."

As the court pointed out in *300 Gramatan Ave. Assoc. v State Div. of Human Rights,* (45 NY2d 176, 183) "three underlying principles should be borne in mind: the statute is to be 'construed liberally for the accomplishment of the purposes thereof' (Executive Law, § 300); wide powers have been vested in the commissioner in order that he effectively eliminate specified unlawful discriminatory practices * * * and discrimination is rarely so obvious or its practices so overt that recognition of it is instant and conclusive, it being accomplished usually by devious and subtle means".

Despite these well-settled principles, appellants argue that the Division lacks statutory authority, absent the issuance of a complaint, to commence an informal pattern or practice investigation into all of their employment practices. We assume, without deciding, that the Division does have such authority. (But see *Matter of Parnessa Realties v State Division of Human Rights,* 65 Misc 2d 136, affd without opn 35 AD2d 1085.) However, any action taken by the Division, *sua sponte,* must be supported by a minimum factual basis *(State Division of Human Rights v Kilian Mfg. Corp.,* 35 NY2d 201, 212; *Liberty Mut. Ins. Co. v City of New York Comm. on Human Rights,* 31 NY2d 1044, 1046).

■ An examination of the record fails to elicit the required factual basis necessary to support the Division's broad-based subpoena. (See *Myerson v Lentini Bros. Moving & Stor. Co.,* 33 NY2d 250.) The statistical information in the record does not indicate a readily ascertainable disparity between the percentage of minorities employed by Nationwide in Syracuse, and the over-all percentage of minorities in the Syracuse metropolitan area. In fact, it seems obvious that the sole reason for the Division's action was the failure on the part of both Nationwide and Liberty to supply the Division with its 1978 EEO-1 Reports.

■ As the court stated in *Matter of A'Hearn v Committee on Unlawful Practice of Law of N. Y.,* (23 NY2d 916, 918) "no agency of government may conduct an unlimited and general inquisition into the affairs of persons within its jurisdiction solely on the prospect of possible violations of law being discovered, especially with respect to subpoenas duces tecum * * * There must be authority, relevancy, and some basis for inquisitorial action". (See, also, *Matter of Napatco v Lefkowitz,* 43 NY2d 884, 885.)

One may speculate on why the Division expended so much effort to obtain the EEO-1 Reports in question. Subdivision (d) of section 709 of title VII of the Civil Rights Act of 1964, as amended (US Code, tit 42, § 2000e-8, subd [d]), authorizes the Equal Employment Opportunity Commission to "furnish upon request and without cost to any State or local agency charged with the administration of a fair employment practice law information obtained pursuant to [§ 709, subd (c)] from any employer"; i.e., the EEO-1 Reports at issue in this case.

The orders and judgments appealed from should be modified, without costs and disbursements, to quash the subpoenas

duces tecum served upon Nationwide and Liberty. In all other respects, the determination at Special Term is affirmed.

SANDLER, ROSS, SILVERMAN and CARRO, JJ., concur.

Orders and judgments (two papers), Supreme Court, New York County, entered on October 3, 1979, modified, on the law and the facts, to quash the subpoenas duces tecum served upon Nationwide and Liberty. In all other respects, the determinations at Special Term are affirmed, without costs and without disbursements.