[662 NYS2d 484]

PRUDENTIAL SECURITIES INCORPORATED, Respondent, v PAUL BRIGIANOS, Respondent.

First Department, September 30, 1997

### APPEARANCES OF COUNSEL

*John J.D. McFerrin-Clancy* of counsel *(Schlam Stone & Dolan,* attorneys), for nonparty appellant.

*Stephen E. Kesselman* of counsel *(Matthew J. Brief* on the brief; *Brief, Kesselman Knapp & Schulman, L. L. P.,* attorneys), for Prudential Securities Incorporated, respondent.

### OPINION OF THE COURT

Tom, J.

The issue for consideration in this appeal is whether compliance with a subpoena duces tecum would violate the nonparty appellant's privilege against self-incrimination under the Fifth Amendment of the United States Constitution and article I (§ 6) of the New York State Constitution.

In this action for breach of contract, plaintiff Prudential Securities Incorporated asserts that on June 29 and 30, 1994, defendant Paul Brigianos placed two unsolicited telephone orders with Prudential to purchase 22,500 shares of Hamilton Bancorp Incorporated stock, at a purchase price of $769,884. When Brigianos failed to pay for the purchases within the required time period, Prudential liquidated his account, which resulted in a loss to Prudential of $125,388.50. Prudential commenced the instant action when Brigianos denied that he had placed the orders for the Hamilton shares and refused to reimburse Prudential for the loss.

Brigianos initially denied that he had ever bought or sold Hamilton shares, but in a subsequent deposition admitted that, as of June 24, 1994, he held 23,300 shares of Hamilton. However, he continued to deny placing the purchase orders in issue.

In August 1994, Prudential served upon the nonparty appellant, defendant's father-in-law, a subpoena duces tecum requesting, *inter alia*:

(1) all documents reflecting nonparty appellant's purchases and sales of Hamilton shares,

(2) all documents reflecting Brigianos' purchases and sales of Hamilton stock and

(3) all documents relating to any agreement (i.e., loans) between nonparty appellant and defendant concerning a purchase or sale of Hamilton shares.

Prudential's position was that the documents are relevant to prove Brigianos' unsolicited purchases on the dates in issue, and to discredit him since the documents purportedly would establish that the nonparty appellant had advised his son-in-law to purchase the shares and had even loaned him money to make the purchases. Prudential's position was supported by the deposition of Kenneth Rosato, a Janney Montgomery Scott broker, who testified that, as of June 24, 1994, nonparty appellant, Brigianos and their wives owned 107,000 shares of Hamilton in Janney Montgomery Scott accounts and that on June 13, 1994, nonparty appellant loaned Brigianos $68,000 to purchase Hamilton stock. Rosato's testimony was based, in part, upon Janney Montgomery Scott's account statements.

On December 20, 1994, the Securities and Exchange Commission (SEC) served upon the nonparty appellant a subpoena duces tecum seeking, *inter alia*, all documents relating to his trading of Hamilton shares, pursuant to a SEC investigation of insider trading by nonparty appellant. The SEC investigation was disclosed to the IAS Court in an affirmation by nonparty appellant's counsel "submitted under seal." Although the investigation is currently for civil violations, nonparty appellant asserts that such alleged violations also potentially constitute a Federal felony, and that such cases often are referred by the SEC to the United States Attorney's office for criminal prosecution. On May 5, 1995, nonparty appellant appeared before the SEC pursuant to the subpoena and asserted his Fifth Amendment privilege and did not testify or produce any documents.

Nonparty appellant then moved before the IAS Court to quash Prudential's subpoena on the grounds that compliance would violate his privilege against self-incrimination under both the United States and New York State Constitutions by reason of the pending SEC investigation.

The IAS Court denied that portion of the motion to quash all documents reflecting nonparty appellant's 1994 trading in

Hamilton shares and all documents regarding any 1994 loans to Brigianos. However, the IAS Court stayed production of Brigianos' trading records pending the SEC investigation, by reason that such disclosure may implicate the nonparty appellant in a criminal prosecution for insider trading. The IAS Court held that if, upon conclusion of the investigation, no criminal charges are filed against nonparty appellant, Prudential may compel production of Brigianos' 1994 trading documents. As to nonparty appellant's own trade and loan documents, the court found that they constituted regular business records that would normally be expected to be in nonparty appellant's possession and control, and the production thereof would not implicate any testimonial significance. Nonparty appellant appeals on the ground that the production of his own trading records in Hamilton stock, and loan agreements between himself and Brigianos, would impinge upon his Fifth Amendment privilege against self-incrimination.

The Fifth Amendment of the Unites States Constitution provides that no person "shall be compelled * * * to be a witness against himself." The Fifth Amendment privilege protects a person against being incriminated by his own compelled testimonial communications. Documents that were voluntarily prepared are not deemed to contain compelled testimonial evidence and cannot be used as a ground to invoke Fifth Amendment rights (*Fisher v United States*, 425 US 391, 410; *see also, United States v Doe*, 465 US 605, 611-612 [the contents of one's own business records are not privileged, as long as the records were voluntarily prepared]). Thus, an individual cannot avoid compliance with a subpoena merely by asserting that the documents sought contain incriminating writing, whether of his own or that of another person (*Fisher v United States, supra,* at 410).

While documents voluntarily prepared lack the element of compulsion and therefore are not within the protected rights of the Fifth Amendment, the act of producing such documentary evidence may implicate the Fifth Amendment privilege against self-incrimination. In this respect, the Supreme Court has held that: "The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the [subpoenaed person]. It also would indicate the [subpoenaed person's] belief that the papers are those described in the

subpoena" (*supra,* at 410). Whether the production is testimonial and incriminating for purposes of the Fifth Amendment depends upon the facts and circumstances of the particular case.

In *Fisher*, various taxpayers, who were being investigated for possibly violating the Federal income tax laws, were subpoenaed by the Internal Revenue Service to produce certain records prepared by their accountant. There, it was undisputed that each of the taxpayers, after obtaining the work product from his accountant, transferred the documents to an attorney in order to obtain legal assistance in the tax investigation. The Supreme Court held that, although the taxpayers' act of producing the subpoenaed documents would tacitly concede their existence and location as well as the taxpayers' possession and control over them, such compliance did not rise to the level of testimonial self-incrimination since the existence and location of the papers are a "foregone conclusion" and the taxpayer added little or nothing to the sum total of the government's information by conceding possession (*supra,* at 411). Because the government was not relying on the taxpayers' compliance to prove the existence of or their access to the documents, the tacit averments of the taxpayers were not "testimonial" and "incriminating" for purpose of invoking the Fifth Amendment privilege.

In the case at bar, the very breadth of Prudential's subpoena requesting "any and all" documents relating to nonparty appellant's purchase and sale of Hamilton stock fails to demonstrate that the existence and possession by nonparty appellant of the requested documents are a "foregone conclusion". The Second Circuit in *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992 v Doe* (1 F3d 87, 93, *cert denied sub nom. Doe v United States,* 510 US 1091) held that the act of producing subpoenaed documents may entail incriminating testimony, if the existence and location of the papers are unknown to the government or production would implicitly authenticate the documents. Here, petitioner does not seek to obtain statements of trading at Prudential or Janney Montgomery Scott, which it already possesses, but rather petitioner seeks nonparty appellant's own trading records, of which petitioner has no knowledge, either as to their existence or their location. Nonparty appellant's production of other account statements would implicitly authenticate those documents as his own and would readily show that he traded Hamilton shares during the period in issue at other institutions. Those statements may provide a

link to evidence that might incriminate him since the scope of the SEC investigation includes whether nonparty appellant obtained and acted upon insider information concerning Hamilton Bankcorp.

Furthermore, the subpoena, seeking "any and all documents relating or referring in any manner to Hamilton", by its terms would encompass even papers privately prepared by the nonparty appellant, and the act of production of these documents, also, would implicitly provide authentication. To comply with such a broad mandate of the subpoena, the nonparty appellant would need to select the documents that were responsive, thereby divulging information relevant to the authenticity of any papers that he himself might have prepared in connection with Hamilton (*see, In re Grand Jury Proceedings*, 41 F3d 377, 380). Similar reasoning extends the testimonial privilege to documentation possessed by the nonparty appellant, who purportedly financed the defendant's purchases of the subject securities, evidencing loan transactions between him and defendant. Compliance with the subpoena would, in effect, compel nonparty appellant to become the primary informant concerning the transactions for which he was being investigated (*United States v Doe*, 465 US 605, *supra, affg in part* 680 F2d 327; *see,* 680 F2d 327, 335), implicitly confirming the existence of any loan from nonparty appellant to Brigianos for the purchase of Hamilton stock and also authenticating the contents of the documents disclosed. Such disclosure might incriminate nonparty appellant in the SEC investigation for imparting insider information to another person under circumstances in which it was reasonably foreseeable that such communication would result in a purchase of securities by that other person.

In view of the foregoing, we find that nonparty appellant's act of production pursuant to the order of the subpoena would implicate his Fifth Amendment privilege against self-incrimination, and thus nonparty appellant's motion to quash should have been granted.

Moreover, the relevance of these records to the narrow inquiry before the trial court—whether defendant, himself, had placed an order for a stock purchase on which he later reneged—is tenuous at best. Although there is some impeachment potential insofar as the existence of some of the records might rebut defendant's initial assertion that he had never previously purchased stock for the subject bank, defendant's own deposition concession, as well as the availability of

testimony from other witnesses, undermines any substantial need by plaintiff for the full scope of the documentation demanded.

Accordingly, the order of the Supreme Court, New York County (Walter Schackman, J.), entered on or about August 15, 1996, which, to the extent appealed from, denied portions of nonparty appellant's motion to quash a subpoena duces tecum, is unanimously reversed, on the law and facts, without costs, those portions of the motion granted and the subpoena quashed.

SULLIVAN, J. P., NARDELLI and WILLIAMS, JJ., concur.

Order, Supreme Court, New York County, entered on or about August 15, 1996, to the extent appealed from, reversed, on the law and the facts, without costs, and the motion to quash the subpoena duces tecum granted.