OPINION OF THE COURT
Herbert I. Altman, J.
The People move pursuant to CPL 240.40 (2) for discovery of certain materials in defendant’s possession.
*493 Defendant is charged by indictment with grand larceny and other crimes. The People allege that he obtained diamonds on consignment from 11 different diamond dealers and that he kept the stones without paying for them. In the course of several extensive written and oral bail applications, defendant stated that he did not pay for the goods entrusted to him because he himself was the victim of fraud. According to defendant, he sold the diamonds in question to Dr. Moshe Rabino-witz, the president of Flextrade International (Flextrade), an Israeli diamond concern, who paid for the stones with postdated checks that subsequently bounced. This claim was initially made at defendant’s August 29, 2001 arraignment in criminal court, and was expanded in a September 21, 2001 memorandum in support of a September 26 bail application made before Judge Goldberg. It was also reiterated at his Supreme Court arraignment on September 24, the bail application before Judge Goldberg on September 26, and a similar application before me. At the request of Judge Goldberg, defendant submitted various documents which, he contended, supported his claim. These consist of a letter from Flextrade addressed to defendant’s company, Anaka Designs (Anaka), four credit references attesting to the credit worthiness of Flextrade (and which, defendant represented, either he or his father verified), six memoranda for diamonds from Flextrade to Anaka, a guarantee agreement between Flextrade and Anaka, and seven checks drawn on Flextrade’s account at the Banque du Goth-ard of Monaco and made out to Anaka. In the course of his various applications, defendant has also alluded to the existence of numerous other documents in his possession, which, he represents, prove that he is the innocent victim of Flex-trade’s fraud. In addition, defense counsel played an audiotape for Judge Goldberg on September 26, 2001. The tape was represented to be a recording of a message left by Dr. Rabinowitz on Anaka’s answering machine.
The People have attempted to verify defendant’s claim only to conclude that it is a fabrication. They detail at great length the many discussions they have had with individuals named in the documents submitted by defendant, as well as a representative of the Banque du Gothard, diamond merchants in New York and Israel, and others, none of whom know of the existence of Flextrade or Dr. Rabinowitz. They state that there is no record of Flextrade in either Israel or Great Britain, the two locations where Flextrade purportedly maintains offices. They have spoken with the author of one of the credit references *494 submitted by the defense who informed them he never gave the reference, and never heard of Flextrade (although his business is located at the address given as Flextrade’s). This individual informed the People that in late 2000, Anaka contacted him about the possibility of doing business. He sent back a form letter describing his firm which contained his letterhead and signature. The People speculate that this letter was altered to create the credit reference. They have attempted to analyze the documents in their possession in order to determine their authenticity, but were informed by their expert that he needed the originals to properly conduct his examination. They then asked the defendant to turn over the originals, but after first agreeing to their request, he refused to comply. They now move for discovery of these materials pursuant to CPL 240.40. In addition, they also seek the original audiotape and the originals of many other documents alluded to by the defense in their bail applications, as well as records of telephone calls from Anaka that, according to the defense, confirmed Flextrade’s credit references.
CPL 240.40 (2) (b) provides that, “[u]pon motion of the prosecutor, and subject to constitutional limitation, the court in which an indictment * * * is pending * * * may order the defendant to provide non-testimonial evidence.” In addition to these requirements, the People must show “reasonable need and justification for the discovery” (see People v Sirmons, 242 AD2d 883, 885).
In this case the People have shown such need. The documents provided to Judge Goldberg, as well as the others sought by the People, seemingly support a defense that defendant was the innocent dupe of Dr. Rabinowitz and that he (defendant) therefore lacked criminal intent. The People have made a convincing preliminary showing that although these documents support defendant on their face, his story is a sham and the documents are forgeries. Whether the documents are, in fact, bona fide, can only be determined by submitting the originals to scientific analysis. Were the defendant permitted to introduce the documents at trial without the People ever having tested them, they would be put at a severe disadvantage in contesting his defense. Additionally, if the documents are indeed forgeries, as the People believe, defendant’s previous reliance on them constituted a fraud on the court and their use at trial would perpetrate a further fraud.
The question remains whether the documents are testimonial in nature and whether ordering the defendant to surrender *495 them to the People violates his Fifth Amendment rights. If any of these documents are forgeries, at the very least they are probative of a consciousness of guilt. In addition, their use in a criminal proceeding would open defendant to additional criminal liability.
Although the defendant cannot be compelled to testify against himself, ordering him to comply with the People’s request does not implicate the Fifth Amendment. The situation is far different from that in which a defendant in custody is questioned without benefit of Miranda warnings or is otherwise compelled to implicate himself. If the defendant forged documents or ordered their creation, he did so freely and not under state compulsion. Notwithstanding that fact, the People cannot compel him to produce documents that are testimonial and incriminatory. Although the self-incrimination privilege does not protect business records (see Fisher v United States, 425 US 391), the act of producing records which the state alleges are forged is incriminatory (see United States v Black, 767 F2d 1334; People v Garay, 105 Misc 2d 1; and see Fisher v United States, supra at 410; United States v Doe, 465 US 605, 613). Where a person waives his Fifth Amendment privilege as to the documents, however, their production may be compelled (see United States v Black, supra at 1341). In this case, the defendant has already discussed these documents at great length in the context of his bail applications. He has repeatedly made representations both in open court and in written submissions as to their content and ostensible origin and import. He has no right to use them to his advantage without permitting the People to verify their authenticity. By relying on them in this way he has, therefore, effectively waived his Fifth Amendment rights as to them. Even were that not the case, if the documents that he has already provided the court are forgeries, his attempts to use them to obtain a more favorable bail status constituted attempts to perpetrate a fraud upon the court. The documents are thus the res gestae of a crime. As such, they are not entitled to constitutional protection (see People v Middleton, 54 NY2d 474; People v Luffman, 233 AD2d 726).
I note that if the documents are not forgeries, neither their content nor their production implicates the Fifth Amendment. As noted, the Fifth Amendment does not protect the content of ordinary business records (Fisher v United States, supra). The act-of-production doctrine does not apply because defendant freely admits to having the documents in his possession and their existence and possession are therefore a “foregone conclusion” (see Prudential Sec. v Brigianos 233 AD2d 18, 22).
*496 Defendant’s waiver extends both to the documents that he has supplied to the court as well as to those he has merely discussed in his written submissions or alluded to on the record, as he relied upon them both to support his argument. That the People may obtain some of these records from other sources is irrelevant, as the People are entitled to obtain them from the defendant pursuant to the statute. The defense contends that there is no original of the telephone message purportedly left on Anaka’s answering machine by Dr. Rabinowitz. They are to provide the People with any version of the tape in their possession.
Accordingly, the People’s application is granted in its entirety.