■ In the Matter of BRUCE BRASKY, Appellant, v CITY OF NEW YORK DEPARTMENT OF INVESTIGATION, Respondent. [840 NYS2d 315]—

Order, Supreme Court, New York County (Lottie E. Wilkins, J.), entered April 19, 2006, which denied petitioner's motion to quash a subpoena issued by the New York City Department of Investigation (DOI); and denied petitioner's motion to compel production of the tape and/or transcript of the Department of Investigation's interview of him, unanimously modified, on the law and the facts, the subpoena quashed unless the Department of Investigation grants petitioner immunity, and, in any event, restricted to documents and testimony reflecting the names of petitioner's clients between January 1, 2003 and July 20, 2005, and otherwise affirmed, without costs.

Petitioner Bruce Brasky worked as an attorney for the New York City Department of Finance (DOF) from October 5, 1981 to August 16, 2005. In 1998, Brasky was promoted to Director of DOF's Real Estate unit. He became the director of the Real Estate Tax and Exemptions Policy unit within DOF's Office of Legal Affairs in April 2004.

DOF had a policy which prohibited certain outside employment and required that employees acknowledge in writing their responsibility to adhere to it. Brasky and other DOF employees signed a form stating, "I understand that it is my responsibility to read and fully adhere to the guidelines contained within these Policies and Procedures." The portion of the DOF policy relevant here, provides:

"Employees who wish to engage in outside work in addition to their departmental employment must obtain official agency approval prior to starting such work. . . .

"*no public servant shall represent private interests before any city agency* or appear directly or indirectly on behalf of private

interests in matters involving the city for compensation. *There-fore, the following types of outside employment and outside activities will not be approved for any Finance employee:*

"*(a) Engaging in any Federal, New York State, or New York City tax-related legal . . . practice*" (emphasis added).

In March 2005, the New York City Department of Investigation received an anonymous complaint. It alleged that Brasky was maintaining a private law practice, and that he was preparing documents which were submitted to DOF on behalf of private clients. If substantiated, such acts would be a violation of the City Conflicts of Interest Law and constitute a misdemeanor (NY City Charter, ch 68, § 2604 [b] [6]; § 2606 [c]).

DOI commenced an investigation, and on June 29, 2005, the Deputy Inspector General of DOI interviewed Brasky. On July 20, 2005, DOI requested that Brasky produce, "records of all private practice legal work performed from January 1, 2003 to present, including records of compensation received for work performed." Brasky resigned on August 16, 2005. On September 29, 2005, DOI issued a subpoena duces tecum to him. It read, in part:

"You are hereby commanded . . . to testify under oath in the matter of an investigation relating to the affairs, functions, accounts, methods, efficiency or personnel of an agency of the City of New York . . . and . . . bring with you . . . :

"All documents including, but not limited to, lists, invoices, billing records, accounts receivable records, cash receipt journals, bank deposit records and time records reflecting, identifying or referencing, by name, all persons on whose behalf you provided legal services for the period of January 1, 2003 through July 20, 2005 . . . .

"privileged matter should be identified as such and redacted from the documents or materials produced."

The subpoena also requested: "all other deeds, evidences and writings which you have in your custody, control or power concerning the premises."

Brasky then brought this proceeding to quash the subpoena and to compel respondent to provide a copy of a transcript or tape of his June 29 interview.

The IAS court denied the motion to quash the subpoena. It found that DOI had the authority to seek the requested information and that the specific items sought by the subpoena were relevant to DOI's inquiry. It also held that the requests were justified by the March 2005 complaint and DOI's subsequent investigation. Further, the IAS court found that it would be

against public policy to compel DOI to turn over a transcript of the June 29 interview as it was part of an ongoing investigation.

On this appeal, Brasky contends that the subpoena is overbroad. He also claims that compliance with the subpoena would violate his federal and state constitutional right against self-incrimination, because the act of producing the subpoenaed documents would itself constitute compelled testimony. Brasky also reiterated his right to a tape or transcript of his June 29, 2005 interview.

The DOI has the authority to issue subpoenas as part of an investigation. The authority also extends to Brasky, a former employee of the DOF (*see Matter of New York City Dept. of Investigation v Passannante*, 148 AD2d 101, 104 [1989] [DOI's subpoena power applies to former city employees]). However, this authority is tempered by the settled principle that: " 'no agency of government may conduct an unlimited and general inquisition into the affairs of persons within its jurisdiction solely on the prospect of possible violations of law being discovered, especially with respect to subpoenas duces tecum . . . . There must be authority, relevancy, and some basis for inquisitorial action' " (*see Matter of Levin v Murawski*, 59 NY2d 35, 41 [1983], quoting *Matter of A'Hearn v Committee on Unlawful Practice of Law of N.Y. County Lawyers' Assn.*, 23 NY2d 916, 918 [1969], *cert denied* 395 US 959 [1969]). Here, DOI received an anonymous complaint that Brasky maintained a private law practice while at DOF. Brasky admits this conduct, a violation of DOF's requirement that employees obtain prior written permission before obtaining outside employment. The complaint also alleged that Brasky's private practice included tax or real estate work before DOF, which is a crime. In the circumstances, DOI met the threshold of showing that this complaint was authentic and of sufficient substance to warrant investigation (*see Levin*, 59 NY2d at 41; *Anheuser-Busch, Inc. v Abrams*, 71 NY2d 327, 332 [1988]).

However, the materials sought in the subpoena exceed those relevant to a determination of whether Brasky's private practice included work before the DOF. The only portion of the subpoena relevant to DOI's investigation of whether any of Brasky's practice included prohibited acts is the request for "records reflecting, identifying or referencing, by name, all persons on whose behalf you provided legal services for the period of January 1, 2003 through July 20, 2005." Thus, the subpoena must be limited to demand only that information.

However, Brasky cannot be compelled to comply with even

that directive, as it would violate his federal and state privilege against self-incrimination (US Const 5th Amend; NY Const, art I, § 6). The United States Supreme Court decision in *United States v Hubbell* (530 US 27, 36 [2000]) is instructive. In *Hubbell*, the defendant had pleaded guilty to mail fraud and tax evasion based upon billing practices while a partner at an Arkansas law firm (*id.* at 30). As part of his plea agreement defendant promised to provide "full, complete, accurate, and truthful information" (*id.*) about the Whitewater Development Corporation. Mr. Hubbell was then served with a subpoena seeking a large document production. He invoked his Fifth Amendment privilege, and the prosecutor produced an order pursuant to 18 USC § 6003 (a), conditioning compliance with the subpoena upon a grant of immunity to the full extent allowed by law (*id.* at 31).

However, subsequent to the document production a second prosecution of Hubbell was started for various tax-related crimes and mail and wire fraud (*id.*). The Supreme Court of the United States barred that prosecution as violating Hubbell's Fifth Amendment rights because the items, by virtue of their production, "compelled [Hubbell] to be a witness against himself" (*id.* at 34-35).

The Court explained that there are circumstances, as in *Hubbell*, where compiling and producing documents itself constitutes the making of a compelled incriminating statement. "*[That is,] 'the act of production' itself may implicitly communicate 'statements of fact.' By 'producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic.' . . .* Whether the constitutional privilege protects . . . the act of production itself, is a question that is distinct from the question whether the unprotected contents of the documents themselves are incriminating" (*Hubbell*, 530 US at 36-37 [emphasis added]).

Here, it is plain that compelling Brasky to produce the requested client list would constitute a compelled testimonial act. In essence, Brasky would be stating "these are people to whom I provided legal services between January 1, 2003 and July 20, 2005." This is not knowledge already in the hands of the DOI (*see Prudential Sec. v Brigianos*, 233 AD2d 18, 21-22 [1997] [subpoena quashed where act of production of stock trading records implicated 5th Amendment concerns]; *cf. Fisher v United States*, 425 US 391, 411 [1976] [no 5th Amendment implications to production of tax returns]; *Henry v Lewis*, 102 AD2d 430, 433 [1984] [no 5th Amendment implications to production of patient's medical records]).

To the extent that Brasky's client list matches individuals with transactions before his former employer, his compliance with the subpoena would place him in jeopardy of criminal prosecution for representing clients on tax matters while employed by DOF, a misdemeanor in violation of the City Conflicts of Interest Law (NY City Charter, ch 68, § 2604 [b] [6]; § 2606 [c]). Accordingly, Brasky's motion should be granted to the extent of quashing the subpoena unless he is granted immunity against criminal prosecution. If DOI's main concern is prosecuting petitioner for conflicts of interest, it cannot compel Brasky to inculpate himself via subpoena. On the other hand, if DOI is more concerned about discovering if any of DOF's past decisions were tainted due to Brasky's actions, it can grant him immunity, and, with his client list, attempt to identify any transactions before DOF that were tainted or require further scrutiny.

Finally, Brasky has not presented a compelling interest sufficient to override the "public interest privilege" which shields DOI from disclosing a tape or transcript of the June 29, 2005 interview (*Matter of World Trade Ctr. Bombing Litig.*, 93 NY2d 1, 8 [1999]). DOI persuasively states that it has a "strict policy of safeguarding all evidence the agency receives in its pending investigations." It has also explained that its purpose in maintaining a policy of nondisclosure is "to preserve the integrity of ongoing investigations by not prematurely alerting potential subjects or possible witnesses to the full scope and nature of those investigations." Given that Brasky is not the subject of any pending prosecution, there is presently no basis to provide him with a tape or transcript of his interview. Concur—Mazzarelli, J.P., Nardelli, Buckley, Catterson and Malone, JJ.