[863 NYS2d 400]

In the Matter of VIRGINIA PARKHOUSE, Appellant, v SCOTT M. STRINGER, as Borough President of Manhattan, et al., Respondents.

First Department, August 19, 2008

## APPEARANCES OF COUNSEL

*Whitney North Seymour, Jr.*, New York City, and *Gabriel North Seymour*, Falls Village, Connecticut, for appellant.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Alan G. Krams* and *Leonard Koerner* of counsel), for respondents.

*Matthew Faiella, Arthur Eisenberg* and *Daniel J. Freeman*, New York City, for New York Civil Liberties Union, amicus curiae.

## OPINION OF THE COURT

Acosta, J.

This matter presents two significant issues. The first is whether the Department of Investigation of the City of New York (DOI) has the authority, while conducting an investigation, to subpoena testimony from a private citizen who, although not a New York City employee or in privity with the City, has information relevant to a DOI investigation. If this issue is resolved in the affirmative, then the second must be addressed—whether petitioner is entitled to First Amendment protection regarding her statements at a New York City Landmarks Preservation Commission (LPC) hearing, in which she allegedly spoke on behalf of an elected official without authorization, and then misstated that official's position. We hold that DOI has the authority to subpoena petitioner, and that petitioner's First Amendment rights will not be unconstitutionally infringed upon if she complies with DOI's subpoena.

Petitioner is a long-standing volunteer of Landmark West!, a nonprofit community group whose mission is to preserve the architectural heritage of the Upper West Side of Manhattan. As a committed volunteer, petitioner's activities on behalf of Landmark West! include testifying at public hearings before LPC, which is the agency charged with identifying and designating landmarks and buildings in the City's historic districts.[1]

The facts of this case stem from LPC's public hearing held on October 17, 2006 to determine whether the historic Dakota

---

1. LPC conducts public hearings pursuant to title 25, chapter 3 of the Administrative Code of the City of New York. Administrative Code § 25-313 (b) provides:

> "At any such public hearing, the commission shall afford a reasonable opportunity for the presentation of facts and the expres-

Stables and New York Cab Company Stables should be given landmark status. Petitioner offered into evidence an altered version of a letter written by respondent Borough President Stringer, which she had obtained through her affiliation and volunteer work with Landmark West!.

Stringer's letter in support of landmark status for the two stables was dated August 14, 2006 and addressed to LPC's Chair, with a copy sent to Landmark West!. In relevant part, the letter stated:

> "I am writing regarding two historic stable buildings . . . Both are historic fixtures of Manhattan's Upper West Side and should be preserved. I strongly urge you to calendar these two important buildings for public hearing by the Landmarks Preservation Commission. . . .
>
> "I ask that you move to calendar these two buildings and protect an important part of the history of the development of the Upper West Side."

After circulating the letter, Stringer learned that one of the stables' original facade had already been destroyed, and thus decided to no longer support landmark designation for that structure. However, according to the record, he had no further communication with LPC regarding the stables or his change of position. When Stringer learned that the stables' landmark status would be considered at an LPC meeting to be held on October 17, 2006, he declined to attend, but sent an aide to monitor the proceedings.

Petitioner attended this meeting, signing in as a representative of Landmark West!. She asked to speak, stating that she was "volunteering today to *read* the statement of Borough President Scott Stringer" (emphasis added). Petitioner then read an altered version of Stringer's August 14th letter, removing Stringer's request that the two stables be calendared by LPC, and inserting alternative language, as follows:

> "I am writing regarding two historic stables. . . Both are historic figures [*sic*] of Manhattan's Upper

---

sion of views by those desiring to be heard, and may, in its discretion, take the testimony of witnesses and receive evidence; provided, however, that the commission, in determining any matter as to which any such hearing is held, shall not be confined to consideration of the facts, views, testimony or evidence submitted at such hearing."

West Side and should be preserved. I strongly urge you to calendar these two important buildings for public hearing by the [LPC]. . . .

"I ask that you move to calendar these two buildings and **immediately** protect ~~an~~ **the** important part of the history of the development of the Upper West Side **and landmark these buildings.**"

Petitioner then submitted the letter, with her handwritten changes, to LPC.[2] These handwritten changes, however, were not specifically identified as coming from petitioner, and could have been construed as changes made by Stringer himself.[3]

In a letter dated November 27, 2006, Stringer's counsel informed LPC that petitioner was not authorized to speak on Stringer's behalf and that neither she nor Landmark West! had any affiliation with Stringer. Counsel's letter also stated that Stringer was concerned that any person and/or organization may have falsely induced reliance from a public agency based on representations appearing to derive from the authority of an elected official or public servant. Such conduct is highly inappropriate and, if pursued with the intent to mislead, a potential violation of Penal Law § 190.25 proscribing criminal impersonation, an offense that includes acting with intent to cause another to rely upon pretended official authority.

In February 2007, LPC filed a complaint with DOI, alleging that petitioner had misrepresented the content of Stringer's letter at the October 17, 2006 meeting. Thereafter, DOI commenced an investigation and sought to interview petitioner. She refused a consensual meeting and was consequently served with an administrative subpoena ad testificandum on May 24, 2007.

In response to petitioner's motion to quash the subpoena and in support of DOI's cross motion to compel, Walter M. Arsenault, First Deputy Commissioner for DOI, averred that although petitioner had taken the position that there was no rea-

---

**2.** Petitioner claims that she did not recite that part of Stringer's letter requesting the "calendaring" of these two stables since the public hearing was already taking place, thus making it an outdated request. This, nonetheless, was clearly a material alteration of the letter Stringer had drafted.

**3.** At this same meeting, another representative of Landmark West!, Lindsay Miller, inaccurately signed in as representing Assembly Member Linda Rosenthal and read a letter written by Rosenthal three months earlier, but changing the text so that instead of recommending that the stables be *calendared for consideration* by LPC, LPC was told that Rosenthal *advocated* the stables' designation. Rosenthal later wrote to LPC, complaining about the deception.

son for DOI to interview her, "several unanswered questions remain." For example, he noted that a "first-hand" account of petitioner's and Miller's roles in the process would "help DOI better understand whether Petitioner, Ms. Miller and/or Landmarks [sic] West! engaged in a deliberate effort to improperly influence official government proceedings." It would also help DOI determine whether to make "policy and procedure recommendations . . . to LPC in order to ensure that persons who appear before LPC are in fact representing who they claim to represent." Lastly, DOI wanted to obtain petitioner's "side of the story before determining whether or not to make a criminal referral" of the matter.

■ As a threshold matter, we must determine whether petitioner is subject to DOI's jurisdiction. New York City Charter § 803 (d) gives DOI's Commissioner jurisdiction over "any agency, officer, or employee of the city, or any person or entity doing business with the city, or any person or entity who is paid or receives money from or through the city or any agency of the city."[4] Moreover, DOI may subpoena private individuals as part of its investigatory powers pursuant to Charter § 805.[5] Indeed, the City's investigatory and subpoena power extends to "any person, even though unconnected with city employment, when there are grounds present to sustain a belief [that] such person has information relative to the subject matter of the investigation" (*Matter of Weintraub v Fraiman*, 30 AD2d 784, 784-785 [1968], *affd* 24 NY2d 918 [1969]). It is evident that petitioner's testimony at LPC's hearing was "relative" to DOI's investigation.

Petitioner argues that inasmuch as she is not an employee, agent or officer of a city agency and does not receive money

---

4. Section 803 (b) of the Charter authorizes and empowers the Commissioner "to make any study or investigation which in his opinion may be in the best interests of the city, including but not limited to investigations of the affairs, functions, accounts, methods, personnel or efficiency of any agency."

5. NY City Charter § 805 states

"a. For the purpose of ascertaining facts in connection with any study or investigation authorized by this chapter, the commissioner and each deputy shall have full power to compel the attendance of witnesses, to administer oaths and to examine such persons as he may deem necessary.

"b. The commissioner or any agent or employee of the department duly designated in writing by him for such purposes may administer oaths or affirmations, examine witnesses in public or private hearing, receive evidence and preside at or conduct any such study or investigation."

from or through the City or any of its agencies, DOI cannot subpoena her because she cannot be the subject of an investigation. This argument, however, is unavailing because DOI is investigating LPC's public hearing procedures, not petitioner. Although petitioner's actions at the October 17, 2006 hearing gave rise to DOI's inquiry, thus making her a material party, she is not the target of the investigation (*see C.S.A. Contr. Corp. v Stancik*, 259 AD2d 318 [1999]).

Petitioner also asserts that DOI's subpoena and investigation violates her rights to freedom of expression under the Federal and New York State[6] Constitutions because it chills her speech and impermissibly forces her to explain the logic and rationale of her statements, which she and the amicus characterize as political speech. Notwithstanding petitioner's legitimate concerns with the potential of a government investigation dampening the spirited nature of the public's participation in public hearings and debate, we do not find that the nature or extent of DOI's investigation amounts to the chilling of petitioner's speech rights inasmuch as the investigation is not aimed at the content of petitioner's speech. "[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content" (*Police Dept. of Chicago v Mosley*, 408 US 92, 95 [1972]).

Here, DOI is examining LPC's procedures, which, as they stand, could allow citizens to misrepresent their affiliations with public officials or other groups and undermine the legitimacy and efficacy of the public hearing process. DOI is not conducting a content-based inquiry by investigating or condemning the actual words spoken by petitioner or other participants at the hearing. "The principal inquiry in determining content neutrality, in speech cases generally . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys" (*Ward v Rock Against Rac-*

---

6. New York State Constitution, article I, § 8 states:
   "Every citizen may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press. In all criminal prosecutions or indictments for libels, the truth may be given in evidence to the jury; and if it shall appear to the jury that the matter charged as libelous is true, and was published with good motives and for justifiable ends, the party shall be acquitted; and the jury shall have the right to determine the law and the fact."

*ism*, 491 US 781, 791 [1989]) and not because of offensive behavior identified with its delivery (*see Hill v Colorado*, 530 US 703, 737 [2000, Souter, J., concurring]).

Furthermore, the argument of petitioner and the amicus seems to be premised upon the erroneous assertion that petitioner had a First Amendment right, when appearing before LPC, to falsely convey that she spoke on behalf of Borough President Stringer and to disseminate false information regarding his position. To the contrary, she does not have a constitutionally protected right to disseminate false information in a public forum, since "[s]preading false information in and of itself carries no First Amendment credentials" (*Herbert v Lando*, 441 US 153, 171 [1979] [permitting defamation plaintiff to inquire into editorial processes of magazine alleged to have circulated falsehoods]). The record is devoid of any evidence that petitioner stated her own political opinion at LPC's hearing; her introductory remarks at the hearing that she was "volunteering today to read the statement of Borough President Scott Stringer" belie any such argument.

Even if DOI's investigation was aimed at investigating the actual words spoken by petitioner, which it is not, First Amendment jurisprudence would still deem this government action content-neutral since it is motivated by a permissible content-neutral purpose (*Renton v Playtime Theatres, Inc.*, 475 US 41, 47-49 [1986]), namely to investigate and recommend changes to LPC's current practices and procedures. DOI has a mandate, based on the City Charter, to ensure that the practices and procedures of city agencies are legitimate, do not lead to abuse of process, and are in the best interests of the City. Thus, petitioner's argument that DOI's investigation unconstitutionally infringes upon her right to express her political opinion is unpersuasive.

Contrary to petitioner's contentions, the record offers no support for a finding that DOI's investigation was intended to harass her or prevent her from properly and passionately advocating on behalf of the causes she holds dear, and we find petitioner's allegations in this regard to be conclusory (*see Matter of Grand Jury Subpoenas Served upon Ken Kronberg*, 95 AD2d 714, 716 [1983], *affd* 62 NY2d 853 [1984]).

The goal of citizen participation in public hearings is to give individuals an opportunity to voice their concerns freely, whether as private citizens on behalf of a civic group, or on behalf of a public official, if authorized to do so. By participat-

ing in these hearings, the City is able to take into account the views of all stakeholders and reach the best-informed decision. Furthermore, public hearings themselves are expressions of our First Amendment rights to freedom of speech (see *600 W. 115th St. Corp. v Von Gutfeld*, 80 NY2d 130, 136-137 [1992] [describing the New England town meeting and, by extension, community public hearings, as expressions of our society's embodiment of the First Amendment]). Debate and freedom of speech are bedrock principles of our democracy and should never be compromised.

> "[T]he peculiar evil of silencing the expression of an opinion is, that it is robbing the human race; posterity as well as the existing generation; those who dissent from the opinion, still more than those who hold it. If the opinion is right, they are deprived of the opportunity of exchanging error for truth: if wrong, they lose, what is almost as great a benefit, the clearer perception and livelier impression of truth, produced by its collision with error" (John Stuart Mill, On Liberty, at 35-36 [Ticknor and Fields 1863]).

Here, there is simply no evidence in the record that petitioner was censored or harassed at LPC's hearing. As stated, DOI's investigation is aimed at LPC's current public hearing practices and procedures that have allowed or could allow an individual to testify pretending to represent an elected official.[7] Indeed, the record points to evidence that two public officials were misrepresented at the hearing on October 17, 2006. In addition to Borough President Stringer's complaint that his views were mischaracterized and unauthorized for undue influence, Assembly Member Linda Rosenthal complained by letter to LPC that her authorized representative was not permitted to speak at the hearing because a Landmark West! volunteer (a nonparty to this action) had already signed in on her behalf and read an allegedly altered and unauthorized statement.

---

7. The kinds of questions to which DOI's investigation seeks answers include: What proof of identification is requested when individuals sign in to speak on behalf of themselves, a group, or, as in this case, a public official? If no identification is requested, does this support or undermine the integrity of the public hearing process? What safeguards are in place to ensure that the testimony given at a public hearing expresses the true sentiments of those testifying or those on whose behalf the testimony is presented?

Therefore, far from chilling speech and discouraging public debate on an issue of public concern, DOI's investigation here could have the opposite effect and actually increase citizen participation in public hearings by ensuring that such participation is legitimate and free of unintentional or intentional misrepresentations.

Petitioner insists that the proper action, in lieu of a DOI investigation, would be for Stringer and any other aggrieved parties to make their views known before LPC. However, this argument is misplaced. The "marketplace of ideas" approach to our freedom-of-speech jurisprudence presupposes that the target is the content of petitioner's speech rather than a properly tailored investigation into an administrative agency's policies and procedures. After all, this is not a defamation action where the actual words are at issue (*cf. 600 W. 115th St. Corp. v Von Gutfeld*, 80 NY2d 130 [1992], *supra*). Petitioner's suggested alternative would place public officials in the impossible position of having to police every opinion in the public domain purported to be theirs in order to safeguard against later mischaracterization or use in an unauthorized forum.

Finally, petitioner's Fifth Amendment self-incrimination argument, explicitly rejected as meritless by the motion court, is premature inasmuch as the investigation does not concern any criminality by petitioner. However, to the extent that DOI's investigation shifts focus and attempts to determine whether a criminal referral for petitioner's conduct at the hearing should be made, she cannot be compelled to inculpate herself, and should be given immunity in exchange for her testimony (*see Matter of Brasky v City of N.Y. Dept. of Investigation*, 40 AD3d 531, 535 [2007]).

Accordingly, the order of Supreme Court, New York County (Herman Cahn, J.), entered on or about October 22, 2007, which denied petitioner's application to quash a subpoena served by DOI; granted respondents' cross motion to compel compliance with the subpoena; and denied petitioner's cross motion to strike certain matters from respondents' investigatory filings as scandalous and prejudicial, to have New York City Charter § 803 (b) declared unconstitutional as applied to her, and to enjoin respondents from interfering with her exercise of free speech, should be affirmed, without costs.

LIPPMAN, P.J., GONZALEZ and MOSKOWITZ, JJ., concur.

Order, Supreme Court, New York County, entered on or about October 22, 2007, affirmed, without costs. [As amended by unpublished order dated October 30, 2008.]