[912 NE2d 48, 884 NYS2d 216]

In the Matter of VIRGINIA PARKHOUSE, Appellant, v SCOTT M. STRINGER, as Borough President of Manhattan, et al., Respondents.

Argued June 2, 2009; decided June 25, 2009

## POINTS OF COUNSEL

*Whitney North Seymour, Jr.,* New York City, and *Gabriel North Seymour,* Falls Village, Connecticut, for appellant. I. The New York City Department of Investigations subpoena compelling petitioner to explain her public hearing testimony violated her constitutional free speech rights. (*Bates v Little Rock,* 361 US 516; *Garcia v City of Trenton,* 348 F3d 726; *Terminiello v Chicago,* 337 US 1; *Whitney v California,* 274 US 357; *Greenbelt Cooperative Publishing Assn., Inc. v Bresler,* 398 US 6.) II. New

York City Charter § 803 is unconstitutional as applied to petitioner's public hearing testimony. (*Brown v Socialist Workers '74 Campaign Comm. [Ohio],* 459 US 87; *United States v Powell,* 379 US 48; *Hartman v Moore,* 547 US 250; *Greenbelt Cooperative Publishing Assn., Inc. v Bresler,* 398 US 6.)

*Michael A. Cardozo, Corporation Counsel,* New York City (*Alan G. Krams* and *Kristin M. Helmers* of counsel), for respondents. The order appealed from should be affirmed because petitioner possesses information that is relevant to a lawful investigation by the New York City Department of Investigation. (*Myerson v Lentini Bros. Moving & Stor. Co.,* 33 NY2d 250; *Matter of Weintraub v Fraiman,* 30 AD2d 784, 24 NY2d 918; *Matter of Hirshfield v Hanley,* 228 NY 346; *Matter of A'Hearn v Committee on Unlawful Practice of Law of N.Y. County Lawyers' Assn.,* 23 NY2d 916, 395 US 959; *Matter of Levin v Murawski,* 59 NY2d 35; *Del Vecchio v White Plains Unit, Westchester County Ch., Civ. Serv. Empls. Assn., Local 860,* 64 AD2d 975; *Virag v Hynes,* 54 NY2d 437; *New York State Commn. on Govt. Integrity v Congel,* 156 AD2d 274, 75 NY2d 836; *Greenbelt Cooperative Publishing Assn., Inc. v Bresler,* 398 US 6; *Herbert v Lando,* 441 US 153.)

*Matthew Faiella,* New York City, and *Arthur Eisenberg* for New York Civil Liberties Union, amicus curiae. I. Virginia Parkhouse's statements at issue here are protected by the First Amendment to the Federal Constitution and article I, § 8 of the New York Constitution. (*Mills v Alabama,* 384 US 214; *600 W. 115th St. Corp. v Von Gutfeld,* 80 NY2d 130, 508 US 910; *Brown v Hartlage,* 456 US 45; *Philadelphia Newspapers, Inc. v Hepps,* 475 US 767; *New York Times Co. v Sullivan,* 376 US 254; *Boos v Barry,* 485 US 312; *Whitney v California,* 274 US 357; *Abrams v United States,* 250 US 616; *Riley v National Federation of Blind of N. C., Inc.,* 487 US 781; *Meyer v Grant,* 486 US 414.) II. Strict scrutiny applies to subpoenas targeting core political speech. (*Sweezy v New Hampshire,* 354 US 234; *Laird v Tatum,* 408 US 1; *McIntyre v Ohio Elections Comm'n,* 514 US 334; *Yancey v Apfel,* 145 F3d 106; *Police Dept. of Chicago v Mosley,* 408 US 92; *Perry Ed. Assn. v Perry Local Educators' Assn.,* 460 US 37; *Simon & Schuster, Inc. v Members of N. Y. State Crime Victims Bd.,* 502 US 105; *R.A.V. v St. Paul,* 505 US 377.) III. The subpoena and investigation in this case cannot be found to survive strict scrutiny. (*Carey v Brown,* 447 US 455; *Texas v Johnson,* 491 US 397.)

**OPINION OF THE COURT**

SMITH, J.

Petitioner's testimony at a public hearing before a New York City agency prompted a complaint by a public official, followed by a subpoena to petitioner from the New York City Department of Investigation (DOI). Petitioner seeks to quash the subpoena, claiming that it exceeds DOI's investigative authority and interferes with her First Amendment rights.

We recognize the importance of protecting citizens who speak publicly to their government from intrusion and harassment that may result from official displeasure with what they say. In this case, therefore, we apply with special stringency the general rule that an investigative subpoena will be upheld only where sufficient facts are shown to justify the inquiry. We nevertheless hold that DOI has made a sufficient showing here, and that its subpoena is valid.

I

Petitioner is associated with an organization known as "Landmark West!," which seeks the preservation of historic buildings on the Upper West Side of Manhattan. In 2006, Landmark West supported designating two stable buildings, the Mason/Dakota Stables and the New York Cab Company Stables, as landmarks. On August 14, 2006, the Borough President of Manhattan, Scott Stringer, wrote a letter to the Chair of the New York City Landmarks Preservation Commission (LPC) that was generally favorable to the proposed landmarking. The letter said that the buildings "are historic fixtures of Manhattan's Upper West Side and should be preserved"; it urged the Chair "to calendar these two important buildings for public hearing by the Landmarks Preservation Commission" and to "protect an important part of the history of the development of the Upper West Side." The letter did not say in so many words, however, that the Borough President thought the buildings should be landmarked.

The LPC did calendar the buildings for a public hearing, which took place on October 17, 2006. In the two months between the letter and the hearing, the Borough President apparently changed his mind and decided not to support the landmarking of one of the buildings; the record does not show whether petitioner or Landmark West knew of this change. The Borough President sent a representative to monitor the October 17 hearing, but did not seek to express any views at it.

Petitioner attended the October 17 hearing, signing a "speakers' sign-in sheet" as a representative of Landmark West. Another Landmark West representative, Lindsay Miller, also attended, signing in as a representative of Assemblymember Linda Rosenthal. Assemblymember Rosenthal later asserted, without contradiction, that she never authorized Ms. Miller to represent her. Indeed, the Assemblymember said she sent a member of her own staff to testify, but that person was not allowed to do so because the LPC limits each organization to one speaker, and Ms. Miller had usurped the slot.

Petitioner began her testimony by stating her name and saying "I'm volunteering today to read the statement of Borough President Scott Stringer." She then read an altered version of the Borough President's August 14 letter, without mentioning that she had altered it. She omitted the Borough President's request that the LPC "calendar" the buildings for public hearing, presumably because the LPC had already done so. More important, she added to the letter an express request for landmarking. The last sentence of the letter, as written by the Borough President, said: "I ask that you move to calendar these two buildings and protect an important part of the history of the development of the Upper West Side." The sentence became, in petitioner's reading: "I ask that you immediately protect the important part of history of the Upper West Side and landmark these buildings." Ms. Miller also testified, reading a letter from Assemblymember Rosenthal, which she altered to similar effect.

Borough President Stringer and Assemblymember Rosenthal were unhappy when they heard of these events, and made their displeasure known in letters to the LPC Chair. The more relevant letter for our purposes was written by the Borough President's Counsel, and focuses on petitioner's role at the hearing. The letter says that petitioner was not authorized to speak for the Borough President, and adds:

> "We are concerned that any person and/or organization may have falsely induced reliance from a public agency based on representations appearing to derive from the authority of an elected official or public servant. Such conduct is highly inappropriate and, if pursued with the intent to mislead, a potential violation of New York Penal Law Section 190.25 proscribing criminal impersonation, an offense that includes acting with intent to cause another to rely upon pretended official authority."

After receiving the public officials' letters, the LPC complained to DOI that petitioner and Ms. Miller had made misrepresentations at the public hearing, and DOI began an investigation. DOI asked petitioner to talk to it voluntarily, and when she refused DOI served a subpoena to compel her testimony. Petitioner moved by order to show cause to quash the subpoena; DOI cross-moved to compel compliance. Supreme Court denied the motion to quash and granted the motion to compel (17 Misc 3d 1119[A], 2007 NY Slip Op 52065[U]), and the Appellate Division affirmed (55 AD3d 1 [1st Dept 2008]). Petitioner appeals as of right pursuant to CPLR 5601 (b) (1), and we now affirm.

II

DOI's powers under the New York City Charter are broad. Section 803 (b) of the Charter says:

> "The commissioner [of DOI] is authorized and empowered to make any study or investigation which in his opinion may be in the best interests of the city, including but not limited to investigations of the affairs, functions, accounts, methods, personnel or efficiency of any agency."

Charter § 803 (d) says:

> "the jurisdiction of the commissioner shall extend to any agency, officer, or employee of the city, or any person or entity doing business with the city, or any person or entity who is paid or receives money from or through the city or any agency of the city."

The latter subdivision has not been read as a limitation on the witnesses DOI may subpoena. *Matter of Weintraub v Fraiman* (30 AD2d 784 [1st Dept 1968], *affd* 24 NY2d 918 [1969]) holds that "inquisitorial" power "reaches any person, even though unconnected with city employment, when there are grounds present to sustain a belief such person has information relative to the subject matter of the investigation" (30 AD2d at 784-785 [citation omitted]). We thus reject petitioner's suggestion that she is immune from subpoena by DOI merely because she is neither a city employee nor a person doing business with the city. The harder question is whether the facts here provide an adequate basis for subpoenaing her.

III

*Myerson v Lentini Bros. Moving & Stor. Co.* (33 NY2d 250 [1973]) establishes that public agencies do not have carte

blanche in issuing investigative subpoenas. In that case, which involved an investigation by the Department of Consumer Affairs into alleged deceptive trade practices, we held "that a witness subject to a 'non-judicial' subpoena duces tecum may always challenge the subpoena in court on the ground it . . . subjects the witness to harassment" (*id.* at 256 [citations omitted]). This holding applies with equal force to a subpoena seeking testimony. In *Myerson*, we quashed a broad subpoena duces tecum, because of the "slim showing made to support inquisitorial action" (*id.* at 260). The question here is whether DOI has made a sufficient showing of justification for its "inquisitorial action" in seeking to compel petitioner's testimony.

In answering this question, we must take account of the unusual subject matter of this investigation: the actions and words of witnesses at a public hearing. Petitioner, and the New York Civil Liberties Union as amicus, point out correctly that speech of citizens to government officials requesting governmental action is at the very core of the freedom of speech protected by the First Amendment. "[T]here is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs" (*Mills v Alabama*, 384 US 214, 218 [1966]). There is a danger that subpoenas may be used to intimidate or harass participants in such free discussion, and for that reason, we demand more to support a subpoena in a case like this than in one like *Myerson*, which involved alleged overcharges by a moving company. We said in *Myerson* that we would not require "a strong and probative basis for investigation" (33 NY2d at 258); we do require it here. But after applying that demanding test, we conclude that the DOI has presented enough facts to justify its subpoena.

IV

As we interpret the record, there are two subjects about which DOI seeks to question petitioner: Ms. Miller's allegedly deceptive conduct in signing in as a representative of Assemblymember Rosenthal, and petitioner's misreading of Borough President Stringer's letter. We hold that DOI may properly ask petitioner about both subjects, though the second presents a closer question.

The information available to DOI indicated that two representatives of Landmark West had spoken at the public hearing—one, petitioner, acknowledging that she was a Landmark West representative and the other, Ms. Miller, claiming falsely to

represent Assemblymember Rosenthal. The result was that, though LPC procedures called for one member to speak from each organization, Landmark West got two speakers and Assemblymember Rosenthal got none. This apparent manipulation of the system was a problem plainly within DOI's jurisdiction, which allows it to investigate the "affairs . . . methods . . . or efficiency of any agency" (NY City Charter § 803 [b]). Nor can it plausibly be argued that, if Landmark West did usurp Assemblymember Rosenthal's right to have a representative speak at the hearing, that conduct was protected by the First Amendment. Whether or not the incident could be a basis for action against anyone, DOI could reasonably investigate whether it showed a need for improvement in LPC procedures.

There is no evidence that petitioner was at fault for the way in which Ms. Miller signed in at the hearing, but DOI had a reasonable basis for asking petitioner what she knew about that subject. There are obvious questions—Did petitioner discuss with Ms. Miller how she would sign in? Did they discuss finding a way by which both of them would be allowed to speak?—to which petitioner could be expected to know the answer. If the sole purpose of DOI's subpoena was to ask questions along these lines, we would have no difficulty in holding it to be proper.

DOI's investigation of petitioner's own role at the hearing is more troublesome. DOI argues that in petitioner's case, as in Ms. Miller's, it is investigating not the content of testimony, but only an alleged misrepresentation of authority—whether petitioner falsely claimed to represent Borough President Stringer. The Appellate Division apparently accepted this argument, finding that "DOI is not conducting a content-based inquiry by investigating or condemning the actual words spoken by petitioner or other participants at the hearing" (55 AD3d at 7). But this finding is not supported by the record. There is no evidence that petitioner claimed to be authorized to speak on Borough President Stringer's behalf. She signed in as a representative of Landmark West, and said that she was "volunteering" to read the Borough President's letter.

DOI is plainly investigating the content of petitioner's statement at the hearing. The affidavit of DOI's First Deputy Commissioner, submitted to explain the basis for the investigation, quotes petitioner's testimony and attaches an audio recording of it. In fact, the only acts or words of petitioner that appear to provide any reason to investigate are her words at the hearing—specifically, her inaccurate reading of the Borough President's letter.

We tread with great care in holding that a city agency may investigate testimony given at a public hearing. The idea is troubling in itself, and all the more so when the investigation was apparently prompted by the complaint of a public official whom the person testifying had annoyed. If the facts here were slightly different—if, for example, petitioner had not claimed to read the letter, but to summarize it, even if her summary was a gross distortion—there would be a strong argument for quashing the subpoena. A government investigation should not be allowed to trespass on the principle that "debate on public issues should be uninhibited, robust, and wide-open" (*New York Times Co. v Sullivan*, 376 US 254, 270 [1964]).

But petitioner did claim to read the letter verbatim, and she did not do so. She changed it in a way that arguably made a significant difference. We cannot say that DOI is forbidden to investigate what seems to have been a knowingly false statement of fact to a city agency, even one made at a public hearing. "Spreading false information in and of itself carries no First Amendment credentials. '[T]here is no constitutional value in false statements of fact.' " (*Herbert v Lando*, 441 US 153, 171 [1979], quoting *Gertz v Robert Welch, Inc.*, 418 US 323, 340 [1974].) What, if any, action might be taken against petitioner for her statement is a different question, but DOI was entitled to subpoena her and question her about it. Of course, as to any question she is asked, petitioner may if she wishes assert any applicable privilege.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur; Chief Judge LIPPMAN taking no part.

Order affirmed, with costs.